MIKULSKI *v.* HUDSON MOTOR CAR CO.

1. WORKMEN'S COMPENSATION—REVIEW OF PAYMENTS—RES JUDI-
CATA—PHYSICAL CONDITION.

Under statute pertaining to review of payments of workmen's
compensation whereby they may be ended, diminished or in-
creased as the facts warrant, the doctrine of *res judicata* is
limited in its operation when sought to be applied to man's
physical condition since such condition constantly changes
(2 Comp. Laws 1929, § 8453).

2. SAME—FURTHER COMPENSATION—CHANGE OF PHYSICAL AND
MENTAL CONDITION—REHEARING.

Reopening of inquiry into employee's physical and mental con-
dition by the department of labor and industry at hearing
on second petition for further compensation based upon an
alleged change in her condition was a matter which the de-
partment had a right to consider and did not constitute a
rehearing upon a predetermined question (2 Comp. Laws
1929, § 8453).

3. SAME—REHEARINGS.

The department of labor and industry has no power to grant
a rehearing of its determination.

4. SAME—PHYSICAL CONDITION—RES JUDICATA.

In workmen's compensation cases an unappealed finding of
physical condition, while conclusive on the parties up to the
date of such award, is not *res judicata* with regard to sub-
sequent proceedings on a further application.

5. SAME—QUESTION FOR TRIER OF FACT—EVIDENCE.

As to determinations of fact the Supreme Court cannot set
aside an award of the department of labor and industry when
the record contains any competent evidence to support it
(2 Comp. Laws 1929, § 8451).

6. SAME—HEAD INJURY—CHANGE OF PHYSICAL AND MENTAL CON-
DITION—EVIDENCE.

On second petition for further compensation by woman who
had sustained a scalp laceration and head injury, where there

Right of plaintiff after judgment has been rendered against him
on ground of nonexistence of some fact essential to his cause of ac-
tion to maintain an action after such fact subsequently comes into
existence, see Restatement, Judgments, § 54, especially comment **d.**

was competent testimony showing a change for the worse in plaintiff's physical and mental condition traceable to her accidental injury, award for total disability is not disturbed.

Appeal from Department of Labor and Industry. Submitted January 6, 1943. (Docket No. 40, Calendar No. 41,967.) Decided April 6, 1943.

Rose Mikulski presented her claim against Hudson Motor Car Company, employer, and Michigan Mutual Liability Company, insurer, for compensation for injuries sustained while in its employ. On petition for further compensation. Award to plaintiff. Defendants appeal. Affirmed.

*I. W. Ruskin,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper* (*Raymond B. Hart,* of counsel), for plaintiffs.

STARR, J. Defendants appeal from an order of the department of labor and industry entered December 10, 1941, granting plaintiff compensation of $18 a week for total disability, from October 25, 1940, until the further order of the department.

Plaintiff, who was about 38 years old, had been employed by the defendant Hudson Motor Car Company for several years prior to May 23, 1939. Her work was removing stock from hooks on a conveyor line. On that date she sustained an accidental injury by being struck on the head by a falling conveyor hook, which caused a scalp laceration and head injury. After being given first-aid treatment, she was removed to her home where she remained in bed for about two weeks. She was then taken to a hospital where she received medical care for her injuries. On July 18, 1939, plaintiff filed notice and

application for adjustment of claim. Defendants filed denial of liability, and the matter was heard before a deputy commissioner. On September 18, 1939, the deputy awarded plaintiff compensation of $18 a week for total disability from May 23 to August 8, 1939. The deputy stated in such award:

"The deputy commissioner further finds that plaintiff's disability had ceased at the time of her examination on August 8 (1939) by Dr. E. S. Gurdjian."

No appeal was taken from the award. Plaintiff returned to the employ of defendant Hudson Motor Car Company and continued working until December 21, 1939, when she was laid off under seniority regulations. In January, 1940, she returned to defendant's employ, was transferred to another plant and assigned to the work of wiping off automobile bodies, which was considered lighter work. She was physically unable to do such work and a few days later became ill. In February, 1940, plaintiff filed petition for further compensation, alleging that she was still disabled by reason of her injury on May 23, 1939. Defendants answered, contending that plaintiff's condition had not changed and that she was not disabled as a result of her accidental injury. Upon the hearing before the deputy, plaintiff presented medical testimony indicating that she was suffering from a severe emotional disorder precipitated by her injury. A doctor specialized in the field of neurology and psychiatry, who was called by plaintiff as a witness, testified in part:

"After an effort at work following the injury, she developed these symptoms here, mental confusion, forgetfulness, a tendency to cry easily, sleep disturbance, fear, sounds she imagines she hears. This indicates to me a beginning psychosis. That

is, it is more than traumatic neurosis. I think beginning psychotic manifestations.''

A medical witness specialized in the field of neurological surgery, who had testified at the first hearing before the deputy in September, 1939, was called as a witness by defendants and testified in substance that, in his opinion, plaintiff was not suffering from any physical or mental condition resulting from her injury. While admitting that he could not tell ''true complaints from evidence of malingering,'' this witness testified that plaintiff ''exaggerated her complaints'' and was a malingerer. On April 22, 1940, the deputy commissioner awarded her compensation of $18 a week for total disability from December 21, 1939, until the further order of the department. On review, in its opinion reversing the award of the commissioner, the department stated in part:

''Payment of compensation under the prior award was not stopped as of August 8, 1939, because plaintiff had returned to either favored or rehabilitative employment. When that award was entered she had not as yet returned to work. There being no appeal from that award, the aforequoted specific finding of the deputy commissioner is a final determination that on August 8, 1939, plaintiff had no disability from the accident of May 23, 1939. Thus, we have a finding that plaintiff had no loss in earning capacity as of August 8, 1939, resulting from the injuries sustained while in defendant's employ. It is, therefore, incumbent upon plaintiff in the instant petition to show a change for the worse in her physical condition traceable to that accident with a resultant diminution in earning capacity if payment of compensation is to be reinstated. Plaintiff has made no such showing. * * *

''Relative to the medical testimony submitted at the hearing on the instant petition it is our opinion

that the deputy commissioner should have accepted the testimony of Dr. E. S. Gurdjian, a highly qualified neurologist, whose testimony at the prior hearing formed the basis for the prior award. His testimony, in substance, is the same as it was at the time of the prior hearing. We see no reason why that testimony which was once accepted should now be rejected.

"We find that plaintiff has not shown a change for the worse in her physical condition which has lessened her earning capacity since August 8, 1939, when she was found to have a full earning capacity in the employment in which she was injured."

In pursuance of such opinion an order was entered September 6, 1940, reversing the award of the deputy commissioner and denying plaintiff further compensation for the reason "that she has no disability traceable to the accident of May 23, 1939." The record indicates that plaintiff's application to this court for leave to appeal from such award was denied.

On October 29, 1940, plaintiff filed a second petition for further compensation, alleging that as a result of her accidental injury she was suffering "from traumatic neurosis and psychoneurosis" and was totally disabled. Defendants answered, alleging that plaintiff's claimed disability was not the result of her accident and that the matter of her claim for further compensation was *res judicata*. The matter of plaintiff's second petition for further compensation was brought on for hearing before a deputy commissioner, and additional testimony was taken. Plaintiff and also Dr. Schwartz, the neurologist and psychiatrist who had testified for plaintiff at the previous hearing, and Dr. Gurdjian, the neurological surgeon who had testified at the two previous hearings, were called as witnesses. Dr.

Gurdjian, called at this hearing as a witness by defendants, testified, in substance, that he had examined plaintiff, that her condition had not changed, and that in his opinion she was a malingerer rather than a neurotic. He said in part:

"*Q.* Your conclusion on the previous hearing, as I remember it, was that it was your belief that she was malingering; is that correct, doctor?

"*A.* Yes, sir.

"*Q.* Is that still your opinion doctor?

"*A.* Well, that is my impression, and there is nothing new in her demeanor now that is any different than it was before. * * *

"*Q.* Doctor, did you ever consider the fact that she (plaintiff) may be more than a neurotic, but a psychotic?

"*A.* It's possible. * * * After all, I am not a psychiatrist myself.

"*Q.* * * * When it came to a question of neurosis or psychosis—which is away from your field of neurology—would you want to hold your opinion as against that of a psychiatrist * * * when he makes a diagnosis of neurosis or psychosis?

"*A.* No."

Dr. Schwartz, who had examined plaintiff on several occasions, testified in part:

"Her symptoms are referable to her head; the dizziness, the headaches, the inability to use a broom—she gets dizzy and has trouble in walking. I feel that this injury has definitely precipitated the picture of her present mental condition as I have described it.

"Q. What is the actual diagnosis as you have made it?

"*A.* She has a psychosis, probably an agitated psychosis with hallucinations.

"*Q.* At one time you felt she had a neurosis?

"*A.* At first it was a question of traumatic neurosis, but in my recent examinations, this men-

tal condition has become much worse, and at the time of the original hearing I felt very definitely that she might end up with a psychosis, and at the third time I indicated that a psychosis had developed. * * *

"*Q.* What I want to find out is whether this psychosis is now related to the trauma?

"*A.* Yes, definitely. * * *

"She is sicker than she has been, in my observation—much sicker. * * *

"Medically, she had a neurosis, or medical symptoms, at that time, and gradually it became worse, to have the picture we have now.

"*Q.* And you feel definitely that her present disability is associated with the accident?

"*A.* No question in my mind about it.

"*Q.* Is this woman able to do any work at all at this time?

"*A.* I do not believe so, no. * * *

"*Q.* Doctor, is there any malingering here?

"*A.* This patient is not malingering because we observed her when she didn't think we were seeing her. * * * She can't fake a picture like this. In the first place she is too stupid, too dull. * * *

"*Q.* Didn't you make a diagnosis of psychosis at the previous hearing?

"*A.* No, traumatic neurosis, but I warned the court and expressed the opinion, in my experience these things may end up in psychosis. * * *

"*Q.* There has been quite a change in her mental condition, you think, from the time you saw her in March to October?

"*A.* So much so that I took the responsibility of telling her and her sister and counsel, and social agencies in Hamtramck of committing her to a hospital."

The deputy commissioner's award denying plaintiff's second application for further compensation stated in part:

"The plaintiff has not shown a change of condition which lessened her earning capacity since April 22, 1940. Further, the plaintiff's disability is the same as it was at the prior hearing and not traceable to the accident of May 23, 1939."

On review, the department's opinion reversing the award of the deputy commissioner stated in part:

"The question to be determined is: Has there been a change in plaintiff's condition for the worse at the hearing from which the claim for review was filed by plaintiff? * * *

"Counsel for the defendants raised the question in regard to the former hearing before the department * * * and in connection therewith contend that plaintiff has no right to a rehearing on the same set of facts upon which the said department had previously denied compensation. In this we could agree with counsel for the defendants were it not for the fact that the record contains medical testimony supporting plaintiff's contention that her condition has grown steadily worse to the extent that the doctor for the plaintiff had recommended that she be committed to an institution for mental defectives. There is testimony upon the record indicating that the plaintiff's testimony gave additional probative value to the medical testimony given by Dr. Schwartz.

"After a careful review of the record in this case, it is the opinion of this department that the deputy commissioner ought to be and is hereby reversed."

In pursuance of such opinion the department entered an order as of December 10, 1941, granting plaintiff compensation at the rate of $18 per week for total disability, from October 25, 1940, until the further order of the department. Having obtained leave, defendants appeal from such order.

Defendants contend, in effect, that the department's determination of September 6, 1940, that plaintiff. "has no disability traceable to the accident of May 23, 1939," is *res judicata* as to plaintiff's present claim. Defendants also contend that, by its order of December 10, 1941, awarding plaintiff compensation, the department in effect granted a rehearing on its previous award denying compensation. In their brief defendants state their contention as follows:

"The department in support of its present order and finding (third hearing) held that the plaintiff's condition had become worse because at the prior hearing she was suffering from a neurosis and is now suffering from psychosis.  *  *  *  Assuming for the moment there was a change, the change here which the department refers to on which they base their finding, is a change from the mental disease of neurosis to a mental disease of psychosis. The sole difference between neurosis and psychosis is merely that of degree but it still remains that both constitute mental disease. We contend that the degree in a mental disease makes no difference whatever for the reason that when the department held that the disability as a result of such mental disease was not traceable to the accident, how can it be said without granting a rehearing that such disease at a subsequent hearing be held to be attributable to the accident.  *  *  *

"Plaintiff's disability resulting from a mental disease which was the sole basis of her claim for compensation (second hearing) was denied by the department on a holding that such disease was not traceable to the accident. This adjudication, the defendants contend, was *res judicata* as to plaintiff's present claim that she now has a compensable disability as a result of the same mental disease."

Defendants' contentions are based upon the erroneous assumption that plaintiff's physical and

mental condition at the time the department awarded her compensation in December, 1941, was the same as her condition at the time the department denied her compensation in September, 1940. The deputy commissioner's award of compensation on September 18, 1939, stated "that plaintiff's disability had ceased at the time of her examination on August 8." Thereafter plaintiff returned to work and continued until laid off under seniority regulations. In January, 1940, she again returned to work and continued until she became ill. In February, 1940, she filed her first claim for further compensation and on April 22, 1940, was granted compensation by a deputy commissioner. On review the department reversed the deputy and denied compensation on the ground that plaintiff had failed to show "a change for the worse in her physical condition * * * traceable to the accident." In October, 1940, plaintiff filed her present claim for further compensation; the deputy commissioner denied compensation; and the department, reversing the deputy, granted her compensation on the ground "that the record contains medical testimony supporting plaintiff's contention that her condition has grown steadily worse." There was also medical testimony indicating that her disability was traceable to her accident.

The awards of the department in September, 1939, and September, 1940, were not *res judicata* as to plaintiff's present claim. In *Houg* v. *Ford Motor Co.*, 288 Mich. 478, Mr. Justice POTTER said:

"The doctrine of *res judicata* is limited in its operation when sought to be applied to man's physical condition which constantly changes and under a statute which provides that weekly payments be reviewed and ended, diminished, or increased as the facts warrant (2 Comp. Laws 1929, § 8453 [Stat. Ann. § 17.188])."

See, also, *Murray* v. *Ford Motor Co.*, 296 Mich. 348; *Schneyder* v. *Cadillac Motor Car Co.*, 280 Mich. 127; *Adams* v. *C. O. Barton Co.*, 274 Mich. 175; *Klum* v. *Lutes-Sinclair Co.*, 236 Mich. 100; *Estate of Beckwith* v. *Spooner*, 183 Mich. 323 (Ann. Cas. 1916 E, 886).

The department had the right to consider plaintiff's second petition for further compensation and to reopen its inquiry into her physical and mental condition. The department did not grant a rehearing upon a predetermined question but considered plaintiff's petition which was based upon an alleged change in her condition. In *Jaquith* v. *W. M. Ackerman Electric Co.*, 258 Mich. 362, Mr. Justice Nelson Sharpe said:

"It is well settled that the department has no power to grant a rehearing of its determination. *Panozzo* v. *Ford Motor Co.*, 255 Mich. 149. It may, however, consider and act upon a petition setting forth that there has been a change in the injured person's condition after the order suspending further payment had been entered. *Richards* v. *Rogers Boiler & Burner Co.*, 252 Mich. 52."

In *Murray* v. *Ford Motor Co.*, *supra*, we said, p. 355:

"In compensation cases an unappealed finding of physical condition, while conclusive on the parties up to the date of such award, is not *res judicata* with regard to subsequent proceedings on a further application."

There was direct conflict in the medical testimony as to plaintiff's condition and as to whether or not her condition was traceable to her accident. In its determination and award the department relied upon the testimony of plaintiff and Dr. Schwartz, a neurologist and psychiatrist. In *Rickard* v. *Bridgeman-Russell Co.*, 288 Mich. 175, 180, we said:

"Although the testimony of the medical experts relied upon by the department may not seem convincing to us, we are not at liberty to weigh it or pass upon the preponderance. *Krueger* v. *Hayes Manfg. Co.*, 213 Mich. 218. We have repeatedly held that as to questions of fact we cannot set aside an award of the department of labor and industry when the record contains any competent evidence to support it. * * * The evidence relied upon by plaintiff was competent and sufficient to support the award of the department."

From a careful study of the record we are satisfied that there was competent testimony supporting the department's determination of fact * that plaintiff's condition had "grown steadily worse" and was traceable to her accidental injury. The evidence was sufficient to support the award of the department.

The department's award of December 10, 1941, is affirmed. Plaintiff shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.

---

* See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—REPORTER.