[No. 29088. Department Two. February 24, 1944.]

JIM HUSA, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Harry L. Parr, Assistant,* for appellant.

*Kenneth Durham,* for respondent.

[1]Reported in 146 P. (2d) 191.

Robinson, J.—This appeal was taken by the department of labor and industries from a judgment rendered upon a jury verdict, accompanied and supported by the following answers to special interrogatories propounded by the trial court:

"We the jury in the above entitled cause do find as follows:

"Interrogatory No. 1. Has the disability of the plaintiff, if any, been aggravated after January 12, 1938, and before June 10, 1940, as a proximate result of the injury of *July*, 1937? Answer: Yes.

"Interrogatory No. 2. Has additional disability, if any, resulting from plaintiff's injury been discovered since the closing of his claim on January 12, 1938? Answer: Yes.

"Interrogatory No. 3. What, if any, stated in percentage, was the extent of his disability on June 10, 1940, proximately resulting from his injury of *July*, 1937? Answer: 100%."

The trial court entered judgment remanding the claim to the department, with instructions to reopen it and proceed in accordance with the jury's verdict and findings.

█ The appellant says, in its brief:

"Mr. Husa's case was for aggravation, and the burden upon him was to prove by a preponderance of the evidence that he had an aggravation of the original injury."

That was his burden in the court below. But in this court, since the case was tried to a jury and the jury found a verdict in his favor, the question of preponderance is no longer involved. If there is in the record competent, substantial, and believable evidence in support of the verdict, the judgment entered in accordance therewith must be affirmed, for the scope of our review is limited by chapter 184, Laws of 1939, p. 579, § 1, Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21], as construed by *Alfredson v. Department of Labor & Industries*, 5 Wn. (2d) 648, 105 P. (2d) 37, and many subsequent decisions. It is not for us to say what testimony should be given credence or what evidence should be disbelieved.

There has been transmitted to us, as the statute requires, the complete department claim record, consisting of a

great many documents, letters, reports of medical examinations, etc. It is our understanding, however, that all that went to the jury was the testimony taken in the rehearing by Examiner Jackson, acting for the joint board, together with the exhibits then and there introduced. These exhibits and the testimony so taken, less those portions shown by the statement of facts to have been stricken upon claimant's trial motions, constitute the record which we are called upon to review.

We shall not attempt a complete statement of the evidence, especially that adduced by the department, for we have arrived at the conclusion that there is competent and substantial evidence in the record which supports the answers which the jury returned to the interrogatories. If that be so, the evidence relied upon by the department, no matter how preponderant or persuasive, is not strictly material to our inquiry. It will, however, be necessary to outline it at least, in order to show the background of the case.

Claimant Husa was born in Norway about fifty-nine years before the date of the hearing, and came to this country about thirty-six years prior to the occurrence of the injury which resulted in his claim. In June, 1937, while employed by the West Fork Logging Company, he plunged headfirst from a tree, a distance of about twelve feet, striking his chest upon a limb which was projecting from the ground. He was paid time loss until January 12, 1938. He claims, however, that he was then unable to go to work, but attempted to do so the following July, and the company would not reemploy him on account of his physical condition. He testified that his condition kept getting worse.

In September, 1938, Husa made a claim, based on aggravation, which was denied. He again petitioned in February, 1940. This petition was denied during the following June, and the claimant then appealed to the joint board, which directed its examiner to take the testimony now under review. At the hearing, claimant claimed to be

suffering physically as a result of the injury, in that he had pains in his back and shoulders, and particularly severe and disabling pains in the back of his head, and was at all times dizzy and unable to do any kind of work. The chief difficulty in the case results from the fact that the medical men who have examined him can find no physical conditions which would cause such symptoms. This applies even to the expert who testified in his behalf and upon whose testimony the answers given by the jury must be based.

There was evidence introduced, and upon which the department relies, that the claimant was mentally unbalanced and had delusions long prior to his injury. It is testified that he claimed to have invented the talon fastener and to have discovered the principle which resulted in the invention of the caterpillar tractor. He was also accustomed to talk to his fellow loggers about the lost island of Atlantis, a tale that has been told since Solon heard it from the Egyptian priests centuries ago, and taken seriously in later times by such men as Montaigne, Buffon, and Voltaire, and even by moderns, when the elaborate and intricate carvings on the Mayan temples were uncovered and found to be almost identical in form and design with those on the temples and monuments of ancient Egypt.

According to the testimony adduced by the department, claimant had a delusion that it was possible to communicate with the dead, having derived this idea from the writings of Emanuel Swedenborg. But that same belief (or delusion, if delusion it is) did not prevent Sir Arthur Conan Doyle from creating Sherlock Holmes or from writing an historical work which has been translated in twelve languages, or Sir Oliver Lodge from being ranked as one of the great physicists of his time. Nor did the fact that Swedenborg believed in such communications prevent him from being ranked as one of the greatest intellectuals of all time. See Encyclopedia Britannica (11th ed.), p. 221. It is said that Samuel Coleridge, Robert Browning, Thomas Carlyle, and Henry Ward Beecher were

profoundly influenced by his writing, and it is significant that Emerson, in writing his series of essays on representative men, chose for his subjects Plato, Shakespeare, Montaigne, Goethe, Napoleon, and Swedenborg.

It appears also that claimant's fellow workmen thought him unbalanced because he was a vegetarian, and also because he sometimes walked in his sleep. Particularly significant in their eyes was his belief in reincarnation. The effect of that in convincing his fellow workmen that he was insane was graphically put by one of them, as follows:

"About the only thing he ever talked about when he talked to any one was something on that order [reincarnation]. He never talked about anything worth while like most loggers will talk about like going to town and getting drunk and tearing the town apart and all Jim said along that line was that the last time he had anything to drink or had anything to do with a woman was when he was twenty-one years old and Christ knows how old he is now and Don Wilson was in the room when he made that statement and I believe any one would be a little off when they made a statement like that. His talk was something out of the ordinary. It wasn't intelligent. It was just the extreme and foolishness."

It seems probable that claimant's delusions were quite innocently exaggerated by his fellow workmen, due to the great gulf between his field of thought and their own. Nevertheless, there is no doubt that claimant had delusions prior to his injury, and that he had them during most, if not all, of the more than thirty years he worked in the woods. But none of these pre-injury delusions bear any resemblance to the disabling fixation which, according to the undisputed expert evidence in the case, he now has. Moreover, the testimony of the witnesses who described his pre-injury delusions is uniformly to the effect that, in spite of them, he at all times did the work to which he was assigned, and did it well.

Dr. Nathan K. Rickles, a qualified specialist in nervous and mental diseases of wide experience and a member of the King County Insanity Commission since 1928, exam-

ined the claimant on June 4, 1941, and gave evidence before the examiners three weeks later. He testified that the history of plaintiff's behavior prior to his injury in 1937, indicates that, during that period, he had a simple schizophrenia. When asked to explain that term in lay language, he testified as follows:

"A. It is a mental disease in which we have what is known as splitting of the personality, and an emotional indifference; a disease in which a person fancies that he has the ability to see or hear imaginary voices. He has bizarre feelings at times. And does not react to the normal reactions to so-called socially adjusted individuals. Q. Were you able from your one examination and the history you got from Mr. Husa to determine as to how long this mental disease had been existing? A. Oh, I would say that it was quite chronic. I imagine that Mr. Husa, he states that as far back as the World War he had ideas that, from my judgment, would be abnormal."

Later, during his examination, he further testified:

"Q. And if that were true, that he was able to work from the time that he came to this country up to 1937, to what degree was he disabled by this schizophrenia, if any? A. Well, from the view point as far as physical work was concerned, apparently none. Q. To what degree is he now disabled by reason of this traumatic fixation, resulting from this situation, which you describe? A. At the present time I would say he is completely disabled."

He further testified that the claimant now has a traumatic fixation, a matter of greater degree than a traumatic neurosis, a state of mind where his symptoms, though unaccountable from the physical point of view, are completely real to him.

"Q. In your opinion, Doctor, is there a causal connection or not, between his fall of June 29, 1937, when he struck upon his left chest, the axillary region and sternum; is there a causal connection between that and his present mental condition? A. Yes, I would say that, because the man's complaint, mental conflict at the present time has revolved around the injury and the direct results from it. Q. Is this condition real to this man? A. Oh, yes. Q. Is it recognized in medicine as being a real and disabling condi-

tion? A. Yes. . . . Q. From the length of time this has taken, what is your opinion as to whether or not this condition is permanent? A. Oh, I would say his present condition is permanent."

■ It, therefore, appears that the jury could find, from competent and substantial evidence given by Dr. Rickles, that (1) the claimant is now completely disabled, and (2) that his disability is the result of the injuries suffered in June, 1937. There is no evidence in the record to the effect that this condition existed, or was taken account of by the department, in closing his claim in January, 1938. The answers of the jury to all three of the special interrogatories must, therefore, stand.

■ It is, however, urged by the department that the jury should never have been permitted to pass on the matter, and that the court erred in overruling its motion, made at the close of all the evidence, that the cause be dismissed, or, in the alternative, that the jury be directed to return a verdict for the defendant. In so far as the motion was directed to the factual situation, the court, in overruling it, followed the rule of the first of our cases construing chapter 184, Laws of 1939, p. 579:

"The court, of course, may pass upon the sufficiency of the evidence to take the case to the jury. If the evidence introduced at the hearing before the joint board offers room for a difference of opinion in the minds of reasonable men, then the case must be presented to the jury. . . ." *Alfredson v. Department of Labor & Industries,* 5 Wn. (2d) 648, 652, 105 P. (2d) 37.

This rule has since been applied and quoted with approval in *Sumerlin v. Department of Labor & Industries,* 8 Wn. (2d) 43, 58, 111 P. (2d) 603; *Bilski v. Department of Labor & Industries,* 8 Wn. (2d) 594, 596, 113 P. (2d) 62; *Calkins v. Department of Labor & Industries,* 10 Wn. (2d) 565, 569, 117 P. (2d) 640, and applied without quotation in a number of other decisions.

■ To assert, as was done in the lower court in support of the motion to dismiss and in this court in support of the department's contentions on appeal, that, as a mat-

ter of law, the department is not required to compensate for mental delusions of pain, is merely to quarrel with the decision in *Peterson v. Department of Labor & Indusries,* 178 Wash. 15, 33 P. (2d) 650, in which it was said, in part:

"The problem with which we are confronted presents two phases, one of law and one of fact: (1) Is traumatic neurosis, or neurasthenia, a compensable injury in contemplation of the workmen's compensation act? (2) If so, was there an aggravation of appellant's injury subsequent to the closing of his claim in September, 1929?"

Both of these questions were answered in the affirmative. The first sentence in the answer given to question (2) reads as follows:

"The fact, however, that physical manifestations of appellant's injury have disappeared, makes his condition and suffering none the less real."

This, when all is said and done, is the real sticking point in the case. It is difficult for a layman to accept the fact that claimant's disability is real, but Dr. Rickles, a highly qualified psychiatrist, so testified. There is no evidence to the contrary, and, even had there been a conflict of evidence on the point, it would be our duty to sustain the verdict of the jury.

The decision in the *Peterson* case cites many authorities, both domestic and foreign. We have not departed from that decision, and it seems to represent the view currently taken by other courts. For typical, recent decisions holding that mental disabilities which arise or become aggravated after the physical results of the injury are healed, are compensable, see the following: *Morris v. Garden City Co.,* 144 Kan. 790, 62 P. (2d) 920 (Foot injury and slight injuries about head and face; no physical reason to support his claim for additional compensation. Held that his neurosis was of such a character as to entitle claimant to compensation as for total disability); *Skelly v. Sunshine Mining Co.,* 62 Idaho 192, 109 P. (2d) 622 (In this case, claimant applied for additional compensation on account of "change of condition," which, we take it, is equivalent

to our term "aggravation." The claim was denied because there had been no perceptible change in his physical condition. Held, on appeal, that evidence showed traumatic neurosis, and the cause was remanded to the board to fix the extent of his disability and the amount of the award); *Mikulski v. Hudson Motor Car Co.*, 305 Mich. 97, 9 N. W. (2d) 20 (Claimant received final award in August, 1939; filed a petition for further award in February, 1940. No change in physical condition. Petition denied. Filed new petition in October, 1940. This petition was granted on the ground that a traumatic neurosis had manifested itself after the original settlement. The employer appealed. In sustaining the award, the supreme court expressed itself, in part, as follows:

" 'Although the testimony of the medical experts relied upon by the department may not seem convincing to us, we are not at liberty to weigh it or pass upon the preponderance. . . . The evidence relied upon by plaintiff was competent and sufficient to support the award of the department.' "

The latest case along this line which we have discovered in searching for applicable authorities is that of *Holler v. W. S. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. (2d) 846. The opinion was handed down only two days before the instant case was argued in this court. The plaintiff in the case was a sufferer from schizophrenia, as was claimant here. His affliction was, however, of so serious a nature that he was confined to a mental institution in California. In September, 1940, about a year and a half after his original confinement, he escaped. About a year after his escape, he went to work for the defendant manufacturing company and slipped and fell, jarring his back and spine which resulted in pains in his back and in his head. He continued to work for some days when he was advised to lay off. His condition became worse, and his conduct was such that he was taken before the probate court and sent to an asylum. Here, he was unable to do the light tasks assigned to inmates of his type, and, finally, a claim was

made for workmen's compensation. It was contended that his disability was merely imaginary, and not the result of the fall, but merely a recurrence of his previous insanity, just as it is contended here that Husa's condition was not the result of his fall, but is merely a recurrence of his previous delusions. The supreme court, in reviewing the case, after pointing out that it was not within its province to say what testimony should be believed or disbelieved, but merely to determine whether there was competent and substantial evidence to support the findings of the lower court, went on, as follows:

"Nor is it of benefit to appellants, . . . to point out that claimant was afflicted with schizophrenia or dementia praecox prior to the sustaining of his injuries. Our compensation law prescribes no standard of health for workmen and it is well settled that accidental injuries are compensable where the accident only serves to aggravate or accelerates an existing disease or intensifies the affliction."

That claimant was employable and employed for a substantially continuous period of more than thirty years and right up to the date of his injury in June, 1937, is not disputed. The jury found, upon competent and substantial evidence which they were entitled to believe, (1) that he is now completely disabled, and (2) that his disability proximately resulted from that injury. Under these conditions, we must regard his pre-injury delusions, which were clearly nondisabling, merely as a condition upon which the real cause operated. *Miller v. Department of Labor & Industries,* 200 Wash. 674, 94 P. (2d) 764.

The judgment appealed from is affirmed.

SIMPSON, C. J., MILLARD, BLAKE, and MALLERY, JJ., concur.