[No. 9899-3-I.  Division One.  June 22, 1983.]

ILENE PRICE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

140

*Graham & Cohen, Inc., P.S., Norman W. Cohen,* and *Jeffrey S. Laws,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Edwin J. McCullough, Jr., Assistant,* for respondent.

DURHAM, A.C.J.—The Department of Labor and Industries denied a claim by Ilene Price for aggravation of a 1969 industrial injury. The Board of Industrial Insurance Appeals (Board) affirmed the denial and Price appealed to King County Superior Court. The jury upheld the Board's action, and Price appeals the court's judgment.

On August 11, 1969, Ilene Price suffered an industrial injury which resulted in severe neck and back pain, and eventual surgery. The Department of Labor and Industries (Department) closed Price's claim for industrial insurance benefits in 1974. Price received a permanent partial disability award of 40 percent of the maximum allowable for unspecified disabilities due to her lower back condition, 10 percent of the maximum for unspecified disabilities due to her cervical condition, and 10 percent of the maximum for unspecified disabilities for psychiatric residuals. The claim

was later reopened and closed again on March 17, 1976 with no further award for permanent disability.

In November 1977, Price once more applied for a reopening of her claim for aggravation. The Department denied this claim on June 20, 1978, and Price appealed to the Board of Industrial Insurance Appeals. Following hearings, the examiner found that there was neither organic nor psychiatric aggravation of Price's condition between March 17, 1976 and June 20, 1978, and sustained the Department's denial of Price's application to reopen. Price then filed a petition for review with the Board. This was also denied and the Board adopted the findings of the hearing examiner. Price appealed the Board's decision to King County Superior Court pursuant to RCW 51.52.110. The case was tried to a jury which returned a special verdict sustaining the Board. The court entered judgment in accordance with the verdict and Price appeals.

Price first assigns error to the trial court's denial of her motions to compel the Department to give her a copy of an investigative report prepared in connection with this case. Price sought sanctions against the Department, pursuant to CR 37, for its failure to produce the report. Alternatively, she asked the court to remand the case to the Board, so that it could reconsider its decision in light of the report.

CR 26 controls the scope of discovery in an action before the Board of Industrial Insurance Appeals. RCW 51.52.140; WAC 263–12–125. CR 26(b)(1) generally provides for a wide range of discovery of relevant materials. This rule is subject to the limitations of CR 26(b)(3), which states, in relevant part, that:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain*

*the substantial equivalent of the materials by other means.* In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Italics ours.)

The Department's report quite possibly contained information of interest to Price. Pursuant to CR 26, however, she must fulfill two requirements in order to compel its production. First, she must demonstrate a substantial need for the report. Second, she must show that the pertinent information is unavailable from alternative sources. Price did not meet these criteria. At most, she alleged in nonspecific terms that the report contained "witness statements pertinent to the case at issue." Moreover, counsel for the Department made available to Price the name of the investigator who prepared its report, and conceded during the hearing that Price was entitled to the "names of people who might have information or knowledge of discoverable things". Given the absence of both need and unavailability, the actual contents of the investigative report were not subject to discovery under CR 26(b)(3). Thus, the trial court did not err in denying Price's motions.

Price next contends that the trial court erred in giving instruction 14, particularly that portion italicized:

The extent of any alleged increase in plaintiff's permanent disability between March 17, 1976 and June 20, 1978 proximately caused by the August 11, 1969 industrial injury must be established by medical testimony based at least in part upon one or more objective findings. In evaluating such increased disability, if any, a physician cannot rely solely upon complaints but must have some objective basis for his opinion.

*Statements of complaints by the worker made to a physician are called subjective complaints.* Findings of disability which can be seen, felt, or measured by psychological observation by an examining organic or psychiatric physician are called objective findings.

(Italics ours.)

Price argues that the sentence "[s]tatements of complaints by the worker made to a physician are called subjective complaints" effectively barred the jury from fully considering the psychiatric testimony on her behalf. She asserts that because the psychiatric findings were based solely on her subjective complaints, the jury was forced to conclude that they did not constitute an objective basis, as required by the preceding sentence in instruction 14. The result, according to Price, was that the jury must have felt compelled to reject the relevant psychiatric testimony.

Instruction 14 was derived from WPI 155.09. The essence of this instruction has justifiably been criticized by both the Supreme Court and this court. *See Parks v. Department of Labor & Indus.*, 46 Wn.2d 895, 898, 286 P.2d 104 (1955); *Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 684–85, 571 P.2d 229 (1977). Nonetheless, we cannot say that the giving of instruction 14 constituted reversible error, or that Price was deprived of the chance to fully argue her case.

■ The instruction complained of also stated that "[f]indings of disability which can be seen, felt, or measured by psychological observation by an examining organic or psychiatric physician are called objective findings." We believe that the inclusion of this sentence permitted the jury to fully consider the relevant psychiatric testimony. For example, Dr. Dennis Elrod, Jr., testifying on Price's behalf, explained that he found Price to be well oriented, pleasant, and cooperative. Elrod further reported that Price's mental status proved normal, that she showed no signs of thought or memory disorders, and that Price had no difficulty in terms of formal thinking or mood. Elrod's findings were not the mere parroting of Price's subjective complaints. Rather, they were the product of his independent professional analysis, derived by the application of his education, training, and experience to the specifics of Price's situation.

Taken as a whole, instruction 14 permitted the jury to consider Price's theory of the case, and was reasonably

understandable to the average juror. *See State v. Dana,* 73 Wn.2d 533, 537, 439 P.2d 403 (1968); *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 224–25, 562 P.2d 1276 (1977). Moreover, the precise wording of instructions is well within the sound discretion of the trial court. *Dana,* at 536. We cannot say that the trial court abused its discretion in this instance.

Finally, Price claims that the trial court did not properly instruct the jury on her theory of the case. She maintains that the instructions and the verdict form did not present the issue of increased permanent partial disability to the jury.

The salient instruction here is number 23, which stated:

This is a civil action and requires only five of you to agree upon a verdict. Your verdict in this cause will be in the form of answers to the following interrogatories:

INTERROGATORY No. 1:

Was the Board of Appeals correct in finding that between March 17, 1976 and June 20, 1978, the plaintiff's psychiatric and organic conditions due to her industrial injury of August 11, 1969 did not worsen or become more disabling in any degree?

ANSWER: _____ (Yes or No)

If your answer to Interrogatory No. 1 is "Yes," you will answer no further interrogatory. If your answer to Interrogatory No. 1 is "No," you will answer Interrogatory No. 2.

INTERROGATORY No. 2:

Did the plaintiff become totally and permanently disabled between March 17, 1976 and June 20, 1978, as a proximate result of the August 11, 1969 industrial injury?

ANSWER: _____ (Yes or No)

The jury answered interrogatory 1 affirmatively, thereby indicating that the Board was correct in finding that Price's condition had not been aggravated to any degree. Accordingly, any error related to the presentation of the issue of partial disability was rendered harmless. *See Gaunt v. Alaska S.S. Co.,* 57 Wn.2d 847, 849, 360 P.2d 354 (1961).

Affirmed.

WILLIAMS, J., concurs.

RINGOLD, J. (dissenting)—Instruction 14 told the jury that a physician cannot rely solely on complaints by the worker, but must base his opinion of psychiatric disability at least in part on objective findings of disability "which can be seen, felt, or measured by psychological observation". The doctors testified, however, that a psychiatric examination is "all talking" and that it is very difficult to have objective findings concerning a psychiatric disability. One doctor testified, "you have to assume if they hurt more, they hurt more. Pain is a very tricky thing." The doctors' opinions were based on their conversations with Price. Viewed in the context of this testimony, instruction 14 conveyed a mixed message to the jury: that these conversations both could and could not form the basis for the doctor's conclusion that Price's psychiatric disability had become aggravated. I believe that the objective–subjective distinction is not properly made in a case involving psychiatric disability, and that the jury must necessarily have been misled by the court's instruction 14. Accordingly, I dissent.

The objective–subjective distinction arose out of the concern that a physician not be permitted to base his opinion on possibly self–serving statements made by a claimant.

> If such claims could be established by the testimony of a physician who based his opinion entirely upon what the claimant told him, it would open the door to fraudulent claims, as well as those mistakenly made in good faith. A claimant might honestly believe his subsequent condition arose out of his original injury, but this is a medical question and an opinion thereon must be derived from sources other than the claimant's statement.

*Kresoya v. Department of Labor & Indus.*, 40 Wn.2d 40, 45, 240 P.2d 257 (1952). In a case concerning psychiatric disability, however, as the experts testified here, the medical opinion is often based wholly on statements made by

the patient.

The requirement of objective medical findings also has its roots in the distinction drawn between a treating and nontreating physician for purposes of the rule against hearsay. In *Petersen v. Department of Labor & Indus.*, 36 Wn.2d 266, 269, 217 P.2d 607 (1950), the Supreme Court set out these considerations:

> All doctors take the history of their patients, when it is needed to arrive at a correct diagnosis. Their own skilled observations, aided by the best medical equipment, lead only to objective findings. They cannot clinically observe a pain or a functional disorder. Such subjective symptoms must be related to them by the patient, or by someone on his behalf, and are frequently indispensable to a correct diagnosis and course of treatment.
>
> The doctor receives the statement of these subjective symptoms informally, and they are not given under oath, nor does he attempt to rebut them. The self–interest of the patient is a sufficient guarantee of the trustworthiness of such statements, where the examination is made for the purpose of treatment. Thus, it is the universal rule that, if the doctor who treats a patient later becomes a witness, he may testify as to his medical conclusions, which may be based substantially on subjective symptoms which are in the realm of hearsay. This is a recognized exception to the hearsay rule of evidence. *Foulkrod v. Standard Accident Ins. Co.*, 343 Pa. 505, 23 A. (2d) 430; 67 A. L. R. 10.
>
> The reason for this exception to the rule disappears instantly, when the examination is not made within the doctor–patient relationship for the purpose of treatment, but is made only for the purpose of qualifying the doctor as a witness. Under such circumstances, a claimant may, in describing his symptoms to the doctor, paint a dark picture. He may think his best interest will be served by exaggeration and fabrication of symptoms. Hence, medical conclusions based upon these statements, which were not given under oath or subject to cross–examination, violate the hearsay rule and are not admissible. *Cooper v. Department of Labor & Industries,* [20 Wn.2d 429, 147 P.2d 522 (1944)]; *Roellich v. Department of Labor & Industries,* 20 Wn. (2d) 674, 148 P. (2d) 957 [(1944)].

The Rules of Evidence have eliminated this distinction

between a treating and nontreating physician. ER 703 provides,

### BASES OF OPINION TESTIMONY BY EXPERTS

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Describing the effect of this rule on prior Washington practice, Tegland says,

Rule 703 does not exclude the testimony of an expert who is solicited in anticipation of litigation, so long as the requirements of the rule are met. Furthermore, the patient's description of subjective symptoms is exempted from the hearsay rule by ER 803(a)(4) and may be related to the trier of fact by the physician. Weaknesses in the opinion may be brought out on cross-examination and go to the weight of the evidence.

5A K. Tegland, Wash. Prac., *Evidence,* at 75 n.4 (1982).

In *State v. Eaton,* 30 Wn. App. 288, 294, 633 P.2d 921 (1981), the court applied ER 703 to the admissibility of a psychiatrist's opinion of the defendant's ability to form a specific intent, based on defendant's statements to the psychiatrist:

under the rule it is of no moment that defendant's statements in the psychiatric interviews might be inadmissible hearsay, *if* a psychiatrist could reasonably rely upon them in forming an opinion about defendant's mental condition at the time of the crime.

The objective-subjective distinction was first reviewed as an instruction in *Parks v. Department of Labor & Indus.,* 46 Wn.2d 895, 286 P.2d 104 (1955), a claim which did not involve psychiatric disability. The instruction in that case read,

"Whether plaintiff's disability has increased between May 24, 1948, and June 5, 1951, and whether such increased disability was caused by his industrial injury must be established by medical testimony. To prove

these facts a physician cannot rely solely on what the plaintiff tells him or in other words subjective complaints, but he must have some objective findings of disability with which to compare the increase of disability.

"Statements in regard to disability which are recited by the plaintiff, and which cannot be proved to be present or absent by medical science are called subjective findings. Those signs of disability which can be seen and measured by physicians are called objective findings."

46 Wn.2d at 898. While approving the instruction, "as far as it went," as a technically correct statement of law, the court in *Parks* stated, at page 898,

The distinction to be drawn between subjective and objective findings, and their proper application in each individual case, has given courts great concern, and we do not see how jurors can properly evaluate the testimony unless they are instructed as to the law in this regard. No prejudice resulted to the claimant from giving the questioned instruction. We feel, however, that instructions covering this issue should be more complete in order that the jury may obtain a clearer conception of the proper weight to be given to such testimony.

*See also Wendt v. Department of Labor & Indus.,* 18 Wn. App. 674, 571 P.2d 229 (1977).

Instruction 14 was the result of the trial court's attempt to adapt WPI 155.09 to a case of psychiatric as well as organic injury. WPI 155.09 provides:

SUBJECTIVE—OBJECTIVE DEFINITION

The extent of plaintiff's disability proximately caused by an [industrial injury] [occupational disease] must be supported by medical testimony based at least in part upon one or more objective findings. In evaluating such disability, a physician cannot rely solely upon complaints, but must have some objective basis for his or her opinion. On the other hand, a physician need not rely solely upon objective findings. If there are objective findings, then the physician may also consider subjective complaints.

Statements of complaints by the worker made to a physician are called subjective complaints. Findings of disability which can be seen, felt or measured by an examining physician are called objective findings.

The Note on Use following WPI 155.09 reads, "This instruction may not be proper in instances of mental, emotional, post concussion syndrome, loss of hearing and loss of sight cases, because these conditions may not have objective findings present." 6 Wash. Prac. 464 (1980). The comment to WPI 155.09 states, "Husa v. Department of Labor and Industries, 20 Wn.2d 114, 146 P.2d 191 (1944) is an example of a case where the instruction may not be applicable." 6 Wash. Prac. at 464.

In *Husa v. Department of Labor & Indus.,* 20 Wn.2d 114, 146 P.2d 191 (1944), a physician testified that the claimant had a traumatic fixation, "a state of mind where his symptoms, though unaccountable from the physical point of view, are completely real to him", stemming from his industrial accident. *Husa,* at 119. The court did not discuss the objective–subjective distinction, but impliedly held that the doctor's opinion was competent evidence when it stated,

> It is difficult for a layman to accept the fact that claimant's disability is real, but Dr. Rickles, a highly qualified psychiatrist, so testified. There is no evidence to the contrary, and, even had there been a conflict of evidence on the point, it would be our duty to sustain the verdict of the jury.

*Husa,* at 121. Other cases allowing compensation for psychological disabilities include *Peterson v. Department of Labor & Indus.,* 178 Wash. 15, 33 P.2d 650 (1934) and *Jacobson v. Department of Labor & Indus.,* 37 Wn.2d 444, 224 P.2d 338 (1950). In those cases, testimony of psychiatric disability was not discounted merely because it was based on the claimant's expressed beliefs and complaints.

The standard by which we test the sufficiency of instructions "is that (1) they permit the party to argue his or her theory of the case; (2) they are not misleading; and (3) when read as a whole they properly inform the trier of the fact on the applicable law." *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 224, 562 P.2d 1276 (1977). As applied here, the court's instruction 14 is confusing and could only mis-

150

lead the jury. The instruction did not properly state the law as to psychiatric disability and Price was precluded from arguing her theory of the case.

The dangers of self–serving statements by the injured party to a physician are properly addressed during argument and go to the weight of the physician's testimony, not its legal sufficiency. The instruction was in error, and I would reverse.

Reconsideration denied September 20, 1983.

Review granted by Supreme Court January 6, 1984.