[No. 24853. *En Banc.* June 18, 1934.]

OLE PETERSON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 33 P. (2d) 650.

W. Lon Johnson, Wentz & Bailey, and Thomas I. Oakshott, for appellant.

The Attorney General and John W. Hanna, Assistant, for respondent.

BLAKE, J.—July 10, 1926, plaintiff was working as powder man in a quarry. After a round of shots had been fired, he was engaged in "barring down" rock loosened by the blast, at a point on the side wall of the quarry ninety feet above the floor. While thus engaged, a mass of loosened rock, consisting of several tons, gave way. The avalanche carried plaintiff with it to the floor of the quarry. When dug out of the debris, he was unconscious, and remained so for some hours. He was taken to a hospital, where he remained for two weeks. During the first two or three days, he was in a semi-conscious condition.

The manifest injuries sustained by plaintiff consisted of cuts and bruises only. In the course of two or three months, the bruises disappeared, and the cuts healed. The only physical evidences he had to show for his experience were a few scars. He returned to the quarry, where he was assigned to light work. After a few weeks, he gave up the job, because he was unable to do even light work. Since then he has followed no gainful occupation.

The department of labor and industries paid him time loss until August, 1927, when it closed his claim with an allowance of eight degrees permanent partial

disability. From this order, plaintiff appealed to the joint board, which reversed the order of the department. Plaintiff was thereafter paid time loss until September, 1929, when his claim was again closed, with an additional allowance of seven degrees (fifteen degrees in all) for permanent partial disability.

Plaintiff did not appeal from this order to the joint board. In May, 1932, however, he made application to the department to reopen his claim, pursuant to subdivision (h), § 7679, Rem. Rev. Stat., which provides:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director of labor and industries . . . may, upon the application of the beneficiary . . . readjust for further application the rate of compensation in accordance with the rules in this section provided for the same . . ."

The department denied the application. Plaintiff appealed to the joint board, which sustained the action of the department. Plaintiff appealed to the superior court, which sustained the order of the joint board. From the judgment so entered, plaintiff appeals.

The decision of the joint board was based solely upon the record and files of the department and testimony taken before examiners. The case was presented on the same record in the superior court, no additional evidence having been offered before the trial judge. The cause is here for trial de novo. *Johnston v. Department of Labor and Industries,* 163 Wash. 549, 2 P. (2d) 67. In considering the record, we shall bear in mind that the statute provides that the decision of the department shall be *prima facie* correct, but we must also take into account the fact that the joint board and the trial court decided the case on the same

record presented to us; neither having a better opportunity to judge the credibility of witnesses than we have. *Cheney v. Department of Labor and Industries,* 175 Wash. 60, 26 P. (2d) 393.

The problem with which we are confronted presents two phases, one of law and one of fact: (1) Is traumatic neurosis, or neurasthenia, a compensable injury in contemplation of the workmen's compensation act? (2) If so, was there an aggravation of appellant's injury subsequent to the closing of his claim in September, 1929?

I. That traumatic neurosis, or neurasthenia, is a compensable injury would seem to be a question that is not debatable. This court has repeatedly held that it is an injury for which damages may be awarded in personal injury actions. *Robinson v. Spokane Traction Co.,* 47 Wash. 303, 91 Pac. 972; *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160; *Carton v. Eyres & Seattle Drayage Co.,* 117 Wash. 536, 201 Pac. 737; *Swanson v. Pacific Northwest Traction Co.,* 121 Wash. 96, 208 Pac. 10; *Cole v. Friedman,* 132 Wash. 587, 232 Pac. 361. And the courts quite generally hold that it is compensable under workmen's compensation acts. *Rialto Lead & Zinc Co. v. State Industrial Insurance Commission,* 112 Okla. 101, 240 Pac. 96; 44 A. L. R. 494; *Klein v. Darling Co.,* 217 Mich. 485, 187 N. W. 400; *Harris v. Castile Mining Co.,* 222 Mich. 709, 193 N. W. 855; *In re Hunnewell,* 220 Mass. 351, 107 N. E. 934; *Yates v. South Kirby F. & H. Collieries,* 3 B. W. C. C. (Eng.) 418 C. A., 3 N. C. C. A. 225; *Sykes v. Republic Coal Co.,* 94 Mont. 239, 22 P. (2d) 157. In the latter case, the supreme court of Montana, quoting from *Eaves v. Bleanclydach Colliery Co., Ltd.,* 2 B. W. C. C. 329 C. A., said:

" 'The effects of an accident are at least two-fold; they may be merely muscular effects—they almost

always must include muscular effects—and there may also be, and very frequently are, effects which you may call mental, nervous and hysterical. . . . The effects of this second class, as a rule, arise as directly from the accident which the workman suffered as the muscular effects do; and it seems to me entirely a fallacy to say that a man's right to compensation ceases when the muscular mischief is ended, but the nervous and hysterical effects still remain.' ''

Our own case of *Parker v. Industrial Insurance Department,* 102 Wash. 54, 172 Pac. 830, is in substantial accord with the foregoing authorities, although in that case there still remained physical manifestations of the workman's injury.

II. The fact, however, that physical manifestations of appellant's injury have disappeared, makes his condition and suffering none the less real. From the very beginning, his case has been recognized and diagnosed as traumatic neurosis. While physicians for the department classify it as a *desire* neurosis, we think the record does not justify the classification. For his claim was closed on that theory by the department in August, 1927, under the advice of Doctor Price, a neurologist, who said:

"Diagnosis: Neurosis. No evidence of any organic disturbance of the nervous system. This man has a large number of subjective symptoms, for which I can find no organic explanation. The chief difficulty seems to be his mental reaction to the present situation.

"Recommendation: Final disposition of the case by the payment of a lump sum, as this man's symptoms are apt to continue indefinitely, as long as the state pays compensation for neurosis, or as long as he can reopen his claim whenever compensation ceases."

Notwithstanding this opinion of Doctor Price, the joint board ordered the department to put the appel-

lant back on a time loss basis, where he remained until the claim was again closed in 1929.

Prior to the closing of appellant's claim in September, 1929, the department had him examined by three physicians, who joined in a report which contained the following:

"Conclusion: This man has absolutely no evidences of permanent disability from organic injury. He believes absolutely that he is seriously sick and will never recover. His deafness is catarrhal and has nothing whatsoever to do with his accident. The contraction of the visual field could not be due to an organic injury and is characteristic of neurosis. We are not dismissing this case lightly but fully realize the impression that has been made on this man's mind by the character of his accident. We are sure, however, that he will recover and that that recovery will have to be made by suggestion. In our opinion it is going to require a long time yet to induce him to make the attempt at recovery. The character of his injury has suggested to him that he should be seriously ill. The best treatment for these cases, in our opinion, is resumption of their usual occupation with a settlement of their claims. We notice in the files that he has been given a final settlement of four degrees. We believe that this should be raised to fifteen degrees and that the latter amount would be just to both the claimant and the department."

The same three physicians, Doctor Downs, Doctor Stenberg and Doctor Rogers, examined appellant again in May, 1932. In their report to the department, their findings and recommendations are substantially the same as in their previous report. They say:

"Conclusion: In our opinion there has been no aggravation of Mr. Peterson's condition from his accident since August 30th, 1929. There is an increase in the amount of osteoarthritis of his cervical vertebrae but this has nothing whatsoever to do with his accident. He has a psychoneurosis which now has assumed

the characteristics of a desire neurosis for which the department is not responsible.''

They testified at the hearing before the joint board. With the exception of Doctor Downs, they conceded the reality of appellant's condition. Doctor Downs, in words, denounced him as a faker. However, taking Doctor Downs' testimony as a whole, we think he, too, recognizes appellant's case to be one of genuine neurosis. Apparently his theory (and that of all physicians who have examined appellant for the department) is that the only way appellant can be cured is to deny him the rights to which he is entitled under the workmen's compensation act. The fault in this theory is, however, that it was tried for two and a half years, and appellant did not get well.

To say that there has been no aggravation of appellant's injuries since September, 1929, we would have to ignore the testimony of several disinterested lay witnesses and two physicians who testified on behalf of appellant. The lay witnesses testified to a pronounced increase in loss of memory. The two medical men found an hysterical condition to exist that was manifestly not feigned. There is no evidence in the record of the existence of such symptoms in 1929. Comparing appellant's condition in 1929 with his condition in 1932, the trial court, in its memorandum opinion, said:

''At the various sessions of the hearing before the joint board upon the application to reopen, there was much very substantial testimony going to show that plaintiff's condition was growing worse in 1930 and 1931 and right along up to the time of the hearings in the summer and fall of 1932. But a critical examination of that testimony reveals the fact that it was the man's mental and nervous make-up that was going to the bad.''

To say that this progressing disability of appellant is not due to the accident of July 10, 1926, is, in our opinion, contrary to the clear preponderance of the evidence. No other cause for his present condition is suggested. Prior to the accident, he was a strong, able-bodied man who had not lost a day's work in years because of illness. Since the accident, he has never known what it is to be well, nor has he been able to put in a full day's work. Classifying his case as a "desire neurosis," it is still traumatic in origin. It is real, and it is a condition that would not exist but for the accident. That he *may* some time recover, is no justification for denying him compensation.

Appellant, having sustained the burden of proving aggravation of disability, is entitled to readjustment of compensation under Rem. Rev. Stat., § 7679, subd. (h). The judgment is reversed, and the trial court is directed to enter judgment remanding the case to the department, with directions to proceed accordingly.

MAIN, MITCHELL, MILLARD, HOLCOMB, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—I am unable to concur in the conclusions reached by the majority.

The department, the joint board, and the trial court, after painstaking care, all arrived at the same conclusion, namely: that the appellant had failed to present convincing proof of aggravation having occurred after his claim was closed with an allowance of fifteen degrees for permanent partial disability.

No doubt, there is proof to the effect that the appellant's mental condition became worse after the claim was closed, but, as I read the record, there is no evidence of a convincing nature tending in any substantial way to establish any connection between that mental

condition and the physical injuries suffered in July, 1926.

Aggravation, as the term is used in the statute, means something developing as a consequence of the original injury. The mere fact that one suffered physical injuries in 1926 does not establish that a mental condition developing six years later was caused by those physical injuries.

The department was not called upon to show the cause of the mental condition, but, on the contrary, the burden of proof was on the appellant to establish that the physical injuries of 1926 were the cause of the mental condition of 1932.

My reading of the record leads to the conclusion that there was an entire lack of substantial or convincing evidence of such a relationship between the physical injuries and the later mental condition, and therefore, in my opinion, the judgment should be affirmed.

BEALS, C. J., and STEINERT, J., concur with TOLMAN, J.