[No. 29399.    *En Banc.*    May 31, 1945.]

JAMES P. ANDERSON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

*The Attorney General* and *Simon Wampold, Jr., Assistant,* for appellant Department of Labor and Industries.

*T. J. Hanify,* for appellant White River Lumber Company.

*Griffin & Gershon,* for respondent.

[1]Reported in 159 P. (2d) 397.

BLAKE, J.—On March 6, 1936, plaintiff, while engaged in extrahazardous employment, sustained an injury to his left foot, which necessitated an amputation of the leg half-way between the knee and ankle. He was afforded treatment, given allowance for time loss, and awarded $1,560 permanent partial disability under the industrial insurance act. The award for permanent partial disability was the maximum allowable under the statute then in force for amputation below the knee. The department closed his claim September 16, 1938.

On September 4, 1941, plaintiff petitioned the department to reopen his claim on the ground of aggravation of disability. He alleged that the end of the stump of his leg was tender; that the left knee was painful and unstable and the left thigh was atrophied; that he suffered pain and discomfort in the genito-urinary tract, pain in the back, headaches, dizziness, and loss of hearing, vision, and memory.

The supervisor declined to reopen his claim. He appealed from the ruling of the supervisor to the joint board, which affirmed the action of the supervisor. From the order of the joint board, he appealed to the superior court.

The cause was tried to a jury, to which was submitted, under comprehensive instructions, the issue of aggravation of disability. The jury returned a verdict in favor of the plaintiff to the extent of sixty per cent of the maximum of $2,400, allowable for unspecified permanent partial disability. From judgment entered on the verdict, the department and the employer, the White River Lumber Company, appeal.

The sole question presented on appeal is whether the evidence was sufficient to take the issue of aggravation of disability to the jury.

Accepting the evidence offered by respondent at its face value—which we must—he has developed a well-defined case of neurasthenia since his claim was closed on September 16, 1938. A physician testified that, in his opinion, this condition of respondent is the result of the injury he sustained on March 6, 1936. Appellants insist

that this opinion is based wholly on subjective symptoms and is, therefore, insufficient, under our decisions in *Cooper v. Department of Labor & Industries*, 20 Wn. (2d) 429, 147 P. (2d)· 522, and *Roellich v. Department of Labor & Industries*, 20 Wn. (2d) 674, 148 P. (2d) 957, to take the issue of aggravation of disability to the jury.

The substance of these decisions is that the opinion of a physician, based *wholly* upon statements made by a workman, disclosing subjective symptoms only, is insufficient to take the issue of aggravation of disability to the jury. Here, the physician testified:

"He can hear a watch tick from 4 to 5 inches but he can't locate the sound, he claims . . . The measurements of his right thigh at 10 inches is 22, where the left thigh is only 19½. . . . The stump of the left leg is tender and sensitive and there is pain up and in the left groin and the hip. . . . There is some swelling and tenderness through the knee and the stump. . . . There is also a growth about the size of a walnut at the head of the fibula. He is very nervous. . . . It [difference in measurement of the thighs] shows an atrophy of the injured thigh. . . . You can see some of these conditions; others you cannot. Part are subjective and part are objective."

Obviously, the physician's opinion was not based *wholly* upon subjective symptoms.

Appellants contend, however, that the objective symptoms all pertain to the condition of the left leg, for the injury to which the respondent was awarded the maximum compensation allowable under the law. The court very properly instructed the jury that, this being the case, no additional allowance for aggravation of disability could be made on account of the condition of the leg. But this did not render evidence of the condition of the leg incompetent. On the contrary, the condition of the leg was very pertinent to the establishment of the neurasthenic condition upon which the claim of aggravation of disability must rest.

A physician, called by appellants, testified:

"Q. Now, doctor, an injury resulting in an amputation . . . frequently does cause an injured workman to

have functional complaints, that is, an injury of that nature works on his mind and can result in functional complaints of various kinds? A. Well, some of them do have functional complaints. A great many of them, in fact, . . . Q. Doctor, how do you define functional? Is that more or less imaginative on the part of the person, that is, something that can't be demonstrated on examination and yet the person just feels it himself? A. That's about right. Q. And these complaints, these other complaints, that is, outside of the leg, were connected with the accident from the functional standpoint, were they not? A. Connected with the accident? Q. That is, from a functional standpoint solely? A. You mean just in his imagination? Q. Yes. A. Well, yes, that is probably true."

■ To apply the rule of the *Cooper* and the *Roellich* cases to the facts disclosed by this record would be to remove traumatic neurasthenia from the category of compensable injuries under the industrial insurance act, and would effectually overrule such cases as *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650, and *Husa v. Department of Labor & Industries,* 20 Wn. (2d) 114, 146 P. (2d) 191. In the former case, we said, p. 21:

"To say that there has been no aggravation of appellant's injuries since September, 1929, we would have to ignore the testimony of several disinterested lay witnesses and two physicians who testified on behalf of appellant. The lay witnesses testified to a pronounced increase in loss of memory. The two medical men found an hysterical condition to exist that was manifestly not feigned. There is no evidence in the record of the existence of such symptoms in 1929. . . .

"To say that this progressing disability of appellant is not due to the accident of July 10, 1926, is, in our opinion, contrary to the clear preponderance of the evidence. No other cause for his present condition is suggested. . . . Classifying his case as a 'desire neurosis,' it is still traumatic in origin. It is real, and it is a condition that would not exist but for the accident."

■ What we have just quoted might well be said of the evidence in the instant case except as to its preponderance—with which we are not concerned on a challenge to its sufficiency to make a case for the jury.

Judgment affirmed.

BEALS, C. J., STEINERT, ROBINSON, JEFFERS, MALLERY, and GRADY, JJ., concur.

MILLARD, J., concurs in the result.

SIMPSON, J., dissents.