[No. 29954. Department One. September 25, 1947.]

LOUIS GAKOVICH, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General, Russell M. Lindel* and *John F. Lindberg, Assistants,* for appellant.

*Griffin, Gershon & Stark,* for respondent.

ROBINSON, J.—On June 15, 1943, the respondent, Gakovich, while in the employ of a roadbuilding contractor, was struck in the right eye by a flying piece of rock. The sight of

[1]Reported in 184 P. (2d) 830.

the eye was completely destroyed. He returned to work during the following November. On February 14, 1944, the supervisor of the department entered an order allowing certain time loss and a lump sum of $1,295, this being the amount provided for "loss of sight of one eye" in the then existing scale of awards for permanent partial disability, Laws of 1941, chapter 209, p. 632 (Rem. Supp. 1941, § 7679 [P.P.C. § 705-1]). The claimant immediately applied for a reopening and rehearing of his claim, which was granted, and on March 23, 1944, testimony was given by Gakovich himself and by a doctor called on his behalf. In due course, additional time loss was allowed, but the claim was closed on January 10, 1945, without any further award for permanent partial disability.

Plaintiff applied for a reopening and rehearing on January 24, 1945, and his application was granted. Testimony was taken on June 27 and 28, 1945. After a consideration of this testimony and the testimony previously taken on March 23, 1944, the joint board sustained the order appealed from. Claimant then appealed to the superior court of Kitsap county. The appeal was heard by a court and jury to whom was read the testimony taken by the examiner for the joint board on March 23, 1944, and June 27 and June 28, 1945. Interrogatories were submitted to the jury and answered as follows:

"INTERROGATORY No. 1: Was the plaintiff properly compensated for the permanent partial disability resulting from the loss of his right eye and the sight thereof?

"ANSWER: No.

"Your answer to Interrogatory No. 1 will be 'yes' or 'no.' If you answer that the plaintiff was properly compensated, you will answer 'yes' and you need pay no attention to the following Interrogatory, but if you answer the first Interrogatory 'no,' then you will answer the following Interrogatory;

"INTERROGATORY No. 2: Is the claimant entitled to an additional compensation for an unspecified permanent partial disability?

"ANSWER: Yes.

"If you answer Interrogatory No. 2 'yes,' you will answer the following Interrogatory:

"INTERROGATORY No. 3: What percent of unspecified permanent partial disability is the plaintiff entitled to?
"ANSWER: 20 percent."

The court entered judgment in favor of the respondent for $720 and $250 attorney's fees.

In its preliminary instructions to the jury, the court said, in part:

"The supervisor also awarded the plaintiff the maximum allowed by the workmen's compensation act for the loss of sight in one eye."

The record unmistakably shows that such an award was made. Interrogatory No. 1 should, therefore, not have been submitted because the only possible answer to it was "Yes." The jury answered it "No." But the fact that the jury gave an obviously wrong answer to interrogatory No. 1 is of no real consequence, for claimant was not contending that he was entitled to any additional award with respect to the actual loss of sight of his eye, but that he should receive an additional award for an alleged separate and additional permanent partial disability of a mental nature. That this is so was clearly pleaded in his application for the rehearing by the joint board. We quote paragraph No. 2 thereof:

"That the claimant was injured in the course of extra-hazardous work in the employ of N. Fiorito Company on June 15, 1943. That as a proximate result of the said accident he has suffered permanent partial disability in addition to the previous award made for total loss of sight of the right eye. That his additional disability consists of nervousness, irritability, pain, watering and worrying of his eyes. That prior to the said accident he was suffering from none of the disabilities herein set forth."

It is, therefore, apparent that we have before us a case wherein a claimant, although having received the maximum statutory award for one of the thirty-seven different permanent partial disabilities listed in the statute, is demanding another award for an alleged second and additional permanent partial unspecified disability, upon the ground that it is a direct consequence of the first. If this may be done in a case where the original disability is the loss of the sight of

one eye, for which the statutory compensation is $1,295, it can, of course, be done where a leg is amputated so near the hip that an artificial limb cannot be worn, or at or below the knee so that an artificial limb can be worn, or amputation of one leg below the knee, or of one arm so near the shoulder that an artificial arm cannot be worn, or the major arm at or above the elbow, or forearm at upper third, or the major hand at the wrist, or the enucleation of one eye, or complete loss of hearing; all of which disabilities are rated as of more serious character than the loss of the sight of one eye, serious as that is. Presumably, in all of the above-mentioned cases, and in still others of those listed, there is consequential nervousness and irritability, and the normal tendency of all such injuries would be to cause the unfortunate persons who sustained them a great deal of worry. We are strongly inclined to think that such inevitable consequences must have been considered and taken into account in fixing the maximum amount of the awards for these respective injuries.

Presumably, there may be extraordinary instances when worry over an injury may result in a definite neurosis of so grave a character as to justify an additional award. Because such conditions can be easily simulated, we have held that there must be objective evidence to overcome the presumption in favor of the joint board's order and decision and take the case to the jury. A leading case to that effect is *Cooper v. Department of Labor & Industries*, 20 Wn. (2d) 429, 147 P. (2d) 522. See, also, the later decision in *Kralevich v. Department of Labor & Industries*, 23 Wn. (2d) 640, 161 P. (2d) 661, and numerous cases therein cited.

There was no such evidence in this case. Respondent's claim is based wholly upon his own statements and the testimony of two doctors, Dr. Miller who testified at the hearing on March 23, 1944, having seen the respondent on that day only, and Dr. Wirth who interviewed him preparatory to giving his testimony. Of the testimony of these two doctors, the testimony of Dr. Wirth, since he qualified as a psychiatrist, is the more important, and we quote the salient

portions thereof. The italics used in the following quotations are supplied:

"A. This man presented complaints such as loss of sight in the right eye which worries him. *He* also *complained* that his eye bothered him and—inasmuch as it tears a great deal. That he also had other annoyances such as difficulty in reading, difficulty in walking on the streets and difficulty in crossing streets without endangering his life. *Complained* his memory isn't quite as good as it was. . . . In 1942 he started working for N. Fiorito Company doing pavement construction. On June 15, 1943, he got hurt while working in Bremerton on the highway construction for the same company. The accident occurred while he was picking hard-pa*y* when a rock hit his right eye, injuring the cornea and so on with the resultant loss of vision to that right eye. *He said* he had severe pain from that injury and he received first aid in Bremerton but the doctor didn't do much for him there. . . . On November 22, 1943, the patient again resumed work for the same company. . . . *The man's earning power is approximately the same as he is doing nearly the same kind of work now as he did then.* He lost 5 months off work during the time he was treated for his injury. *He claims* he is not the same man he was since he has only one eye and now is particularly aware of the loss of his eye, when he crosses streets and so on, particularly city streets on account of the crowded conditions and he frequently feels like he endangers himself on account of that condition of his missing eye. He worries a great deal about it. He has a scratching behind the eyelids which is relieved by the use of the medicine. . . . He claims *naturally* he is concerned about the loss of his eye and he never worried prior to that because he didn't have to worry about anything. The man in my opinion hasn't been able to adjust himself to the fact he has lost his eye and is more worried—is unduly worried than necessary maybe, but the fact remains that he is worried. He is concerned and he just isn't as much on the job on account of that worry as he should be in my estimation. . . . I can say this man has a mild psychoneurosis which was the consequence of this injury and as far as compensation is concerned I think 20% of the unspecified is adequate. Q. You feel he has suffered 20% maximum unspecified permanent partial disability? A. Yes, in addition to the loss of vision because of the mental symptoms. Q. Can you explain what you mean by psychoneurosis, doctor? Can you give in lay terminology the mean-

ing of that? A. Psychoneurosis is a condition which is related to mental illnesses and it is defined best by using— by calling psychoneurosis a minor psychosis. A psychosis is a mental illness and by using the word psychoneurosis you mean a minor psychosis or minor mental illness. Naturally, all degrees considered, I considered this a mild psychoneurosis."

The cross-examination of Dr. Wirth consisted of but one question and answer, as follows:

"Q. I take it doctor, you never had occasion to see him except yesterday, June 27th when you examined him for Mr. Gershon? A. That is correct."

At the hearing on March 23, 1944, Dr. Miller, in support of respondent's claim, testified, in part, as follows:

"Q. What did you attribute his complaints of loss of memory, impaired observation, and worry to? A. Why, I attribute that to the loss of the eye."

On recross-examination, he added:

"A. I feel that it is due to the loss, worry, loss of observation, lack of concentration. It simply has reduced his general efficiency as a person. Q. *You have to take the patient's word for those things?* A. Yes, you do." (Italics ours.)

It is, therefore, evident that the testimony of the above doctors was based upon a single observation of the respondent and on what he told them. This does not meet the requirements of the opinion in the *Cooper* case, *supra,* and in other cases which have followed it.

Furthermore, affirmative evidence was given by respondent himself and by his principal witness which tends strongly to indicate that he is not entitled to the additional compensation he seeks.

"The theory upon which compensation is allowed to an injured workman is that such workman has sustained a loss of earning power, or capacity to earn money. Although the amounts to be allowed in specific instances are fixed by statute, the awards are nevertheless predicated upon a commensurate loss of earning power." *Harrington v. Department of Labor & Industries,* 9 Wn. (2d) 1, 7, 113 P. (2d) 518.

"Disability means the impairment of the workman's mental or physical efficiency. It embraces any loss of physi-

cal or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life. *It connotes a loss of earning power.*" (Italics ours.) *Henson v. Department of Labor & Industries,* 15 Wn. (2d) 384, 391, 130 P. (2d) 885.

The record shows that respondent received his injury on June 15, 1943, but went back to his work on November 22, 1943. On June 27, 1945, slightly over two years after the accident, he testified that he was still working for the same employer and "doing the same job" he "had always done with them." Although respondent had already received an award of $1,295 with respect to the loss of his earning power, Dr. Wirth, as we have heretofore seen, testifying on his behalf on June 28, 1945, said:

"On November 22, 1943, the patient again resumed work for the same company. . . . The man's earning power is approximately the same, as he is doing nearly the same kind of work now as he did then. He lost five months off work during the time he was treated for his injury."

Previous payment for the time loss is acknowledged.

The judgment appealed from is reversed, and the cause dismissed.

SIMPSON, JEFFERS, and SCHWELLENBACH, JJ., concur.

MILLARD, J. (dissenting)—On conflicting, competent evidence, the jury found in favor of respondent. The question of fact as to respondent's claim of permanent partial disability is foreclosed by the verdict. The judgment should be affirmed.