[No. 50029-1. En Banc. May 10, 1984.]

ILENE PRICE, *Petitioner,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Graham, Laws & Dalglish* and *Jeffrey Scott Laws,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Carol Newell Pidduck, Assistant,* for respondent.

ROSELLINI, J.—The primary issue in this action is whether, in order for psychological injuries or conditions to be compensable under the workers' compensation act, the injury or condition must be proven by expert testimony based at least in part on objective findings. If compensation may be awarded on the basis of medical testimony regarding wholly subjective symptoms, the issue then becomes whether the jury in this case was given accurate instructions on this rule of law.

We hold that the objective–subjective distinction is inappropriate in actions to recover for psychological injuries and that petitioner was precluded from arguing her theory of the case. The Court of Appeals is reversed. *Price v. Department of Labor & Indus.,* 35 Wn. App. 139, 665 P.2d 434 (1983).

I

Ilene Price was injured in 1969 while working for Cudahy Company in Seattle. The Department of Labor and Industries closed her claim with a permanent disability award of 40 percent of the maximum allowance for unspecified low

back disabilities, 10 percent of the maximum allowable for unspecified cervical disabilities, and 10 percent of the maximum allowable for unspecified *psychiatric residuals.* The claim was later reopened but then closed again on March 17, 1976, with no additional award for permanent disabilities.

On November 23, 1977, Price filed an application to reopen her claim for aggravation of disabilities. The Department denied Price's application, and she appealed to the Board of Industrial Insurance Appeals.

Four doctors testified at the Board hearing, two for the Department and two for Price. All four agreed that Price's 1969 injury caused her a substantial amount of neck and low back pain which, in her opinion, had increased in recent years. None of the doctors felt that Price was lying when she said that the pain had increased. Each agreed that the increase in pain manifested itself largely, if not entirely, in ways not measurable by objective tests. Typical was Dr. Elrod's testimony:

> [I]n psychological, it's much harder to have objective findings[.] . . . [I]f a person is telling the truth, then you have to assume if they hurt more, they hurt more. Pain is a very tricky thing.

Board Hearing Transcript, at 28. The Department's chief witness, Dr. Aigner, testified that much of the findings obtained from the patient is subjective:

> During the course of the examination a lot of subjectivity arises, based on what the patient tells us in terms of what we feel. The patient turns their back or neck a certain way and says it hurts. That's subjective and we record that. We touch an area, they say it hurts. That's subjective. We record that. The objective things like taking blood pressure, listening to the heart, checking reflexes, pupils, and things like that, are the things that are not influenced by the patient but are strictly our own observations.

Board Hearing Transcript, at 20. Dr. Aigner further indicated that he believed that the subjective components of her symptoms were real to Mrs. Price, that when she indi-

cated she was in pain, she in fact experienced pain. Dr. Aigner stated that if he were to go only on the subjective complaints, Mrs. Price would be almost totally impaired, since any type of activity increases her pain.

Price's and the Department's witnesses disagreed primarily as to their opinion of Price's ability to work. Price's experts testified that the pain she felt was real, though perhaps partly of psychological origin, and would affect her ability to work to the same extent as if there were undeniable, objective symptoms that fully explained the pain. The Department's witnesses, on the other hand, testified that because Price's pain was caused largely by psychological factors, she would be able to work if she "felt that working was very urgent"—that is, if she were denied benefits. Dr. Aigner conceded, however, that "She's worse, as far as she's concerned. I have to go on what I find, and here again, we get into the objective versus subjective part of it." Board Hearing Transcript, at 60.

The Board found that Price's "psychiatric condition due to her industrial injury of August 11, 1969 did not worsen or become more disabling in any degree" after her claim was closed in 1976. Clerk's Papers, at 8. The Board, therefore, upheld the Department's denial of Price's application to reopen her claim for aggravation of injuries.

Price then sought judicial review of the Board's decision. Pursuant to applicable statutes, the jury heard the same evidence that had been presented to the Board. The jury was instructed that

> The extent of any alleged increase in plaintiff's permanent disability . . . must be established by medical testimony based at least in part upon one or more objective findings. In evaluating such increased disability, if any, a physician cannot rely solely upon complaints but must have some objective basis for his opinion.

> Statements of complaints by the worker made to a physician are called subjective complaints. Findings of disability which can be seen, felt, or measured by psychological observation by an examining organic or psychiatric physician are called objective findings.

Instruction 14. Price's counsel objected, arguing strenuously that this instruction was inappropriate when plaintiff claims a psychological or psychiatric disability.

The Department's attorney relied upon this instruction several times in closing argument. Counsel told the jury that it is "not enough for plaintiff to say she is worse," and that "'Doctor, I hurt' . . . is [a] subjective symptom; . . . [t]here must be an objective finding basis for an increase in award." Report of Proceedings, at 197, 229.

The jury found that the Board was correct in finding no worsening in Price's psychiatric condition. The trial court therefore entered judgment sustaining the Board's order.

Price appealed, alleging that the trial court erred by giving instruction 14. The Court of Appeals split on this issue. The majority recognized that instruction has been criticized, but held that it adequately permitted Price to argue her theory of the case and was reasonably understandable to the average juror. In his dissent, Judge Ringold argued that the instruction did not properly state the law as to psychiatric disability and concluded that it precluded Price from arguing her theory of the case. *Price v. Department of Labor & Indus., supra* (Ringold, J., dissenting).

## II

Judge Ringold's reasoned dissent was premised on the argument that the objective–subjective distinction is not properly made in a case involving psychiatric disability. We agree. Instruction 14 informed the jury that a physician cannot rely solely on complaints by the worker, but must base his opinion of psychiatric disability at least in part on objective findings of disability "which can be seen, felt, or measured by psychological observation". However, medical opinions derived from psychiatric examination are based on conversations with the patient. Viewed in this context, instruction 14 conveyed a mixed message to the jury: These conversations could and could not form the basis for the physician's conclusion that the psychiatric disability had become aggravated.

The difficulty in applying the objective–subjective test to psychological conditions can be seen in *Wilber v. Department of Labor & Indus.,* 61 Wn.2d 439, 378 P.2d 684 (1963). The majority opinion held that, while an industrial insurance claim may not be reopened for a change in conditions upon the testimony of a physician who based his opinion entirely upon subjective symptoms, if an injured workman's complaints can be verified by the symptoms disclosed by the physician's clinical examination so that the testimony is based upon a tying together of subjective and objective symptoms, all requirements of proof have been met. The 3–member dissent felt that the physicians' examinations merely disclosed the worker's subjective complaints and that the conclusions of the physicians were reached purely on subjective findings.

The trial court's instruction to the jury was taken practically verbatim from WPI 155.09. The Note on Use to this instruction states, however:

> This instruction may not be proper in instances of mental, emotional, post concussion syndrome, loss of hearing and loss of sight cases, because these conditions may not have objective findings present.

WPI 155.09, 6 Wash. Prac. 464 (1980). The comment indicates that the decision of *Husa v. Department of Labor & Indus.,* 20 Wn.2d 114, 146 P.2d 191 (1944) is an example of a case where the instruction may not be applicable. In *Husa,* this court upheld a worker's compensation award even though "the medical men who have examined [the claimant] can find no physical conditions which would cause [his] symptoms." *Husa,* at 117. The court held that:

> To assert . . . that, as a matter of law, the department is not required to compensate for mental delusions of pain, is merely to quarrel with the decision in *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650, in which it was said, in part:
> "The problem with which we are confronted presents two phases, one of law and one of fact: (1) Is traumatic neurosis, or neurasthenia, a compensable injury in contemplation of the workmen's compensation act? (2) If so,

was there an aggravation of appellant's injury subsequent to the closing of his claim in September, 1929?"

Both of these questions were answered in the affirmative. The first sentence in the answer given to question (2) reads as follows:

"The fact, however, that physical manifestations of appellant's injury have disappeared, makes his condition and suffering none the less real."

This, when all is said and done, is the real sticking point in the case. It is difficult for a layman to accept the fact that claimant's disability is real, but Dr. Rickles, a highly qualified psychiatrist, so testified. There is no evidence to the contrary, and, even had there been a conflict of evidence on the point, it would be our duty to sustain the verdict of the jury.

The decision in the *Peterson* case cites many authorities, both domestic and foreign. We have not departed from that decision, and it seems to represent the view currently taken by other courts.

*Husa,* at 120–21.

The court again followed *Peterson v. Department of Labor & Indus.,* 178 Wash. 15, 33 P.2d 650 (1934) in *Anderson v. Department of Labor & Indus.,* 23 Wn.2d 76, 159 P.2d 397 (1945). The worker there was initially awarded a permanent partial disability for an injury which led to the amputation of his left leg below the knee. The worker later filed a claim for aggravation of injuries, alleging that he had pain in his left thigh, pains and discomfort in his back and genito–urinary tract, and loss of hearing, vision, and memory. There were objective medical symptoms only with respect to the claimant's left thigh. The remaining complaints were found to be a "neurasthenic condition"—basically a hysterical response to amputation of the leg. This court upheld the award of compensation for the neurasthenic condition, rejecting the Department's contention that there must be objective symptoms to support any compensation award. *Anderson,* at 78–79.

In *Anderson,* this court acknowledged that it had previously held in *Cooper v. Department of Labor & Indus.,* 20 Wn.2d 429, 147 P.2d 522 (1944) and *Roellich v. Depart-*

*ment of Labor & Indus.*, 20 Wn.2d 674, 148 P.2d 957 (1944) that "the opinion of a physician, based *wholly* upon statements made by a workman, disclosing subjective symptoms only, is insufficient to take the issue of aggravation of disability to the jury." *Anderson,* at 78. This court then declined to apply *Cooper* and *Roellich* to the case before it:

> To apply the rule of the *Cooper* and the *Roellich* cases to the facts disclosed by this record would be to remove traumatic neurasthenia from the category of compensable injuries under the industrial insurance act, and would effectually overrule such cases as *Peterson . . .* and *Husa . . .*

*Anderson,* at 79.

These decisions were inexplicably ignored in *Gakovich v. Department of Labor & Indus.*, 29 Wn.2d 1, 4, 184 P.2d 830 (1947), where this court stated:

> Presumably, there may be extraordinary instances when worry over an injury may result in a definite neurosis of so grave a character as to justify an additional award. Because such conditions can be easily simulated, we held that there must be objective evidence to . . . take the case to the jury. A leading case to that effect is *Cooper v. Department of Labor & Industries, [supra] . . .*

This reasoning cannot be reconciled with the *Anderson* court's holding that *Cooper* does not apply to cases involving psychiatric problems.

The objective–subjective distinction evidenced in *Gakovich* arose out of the concern that a physician not be permitted to base an opinion on possibly self–serving statements made by a claimant. *See Kresoya v. Department of Labor & Indus.*, 40 Wn.2d 40, 45, 240 P.2d 257 (1952). The requirement of objective medical findings also has its roots in the distinction drawn between a treating and nontreating physician for purposes of the rule against hearsay. *See Petersen v. Department of Labor & Indus.*, 36 Wn.2d 266, 269, 217 P.2d 607 (1950).

Both of these rationales have been eliminated. In *Hunsley v. Giard,* 87 Wn.2d 424, 553 P.2d 1096 (1976), we held

that the reasons advanced for denying recovery for psychic injury, *i.e.*, fear of fictitious and feigned claims, have been generally discarded. Additionally, the Rules of Evidence have eliminated the hearsay distinction between a treating and nontreating physician. ER 703 provides:

**BASES OF OPINION TESTIMONY BY EXPERTS**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Describing the effect of this rule on prior Washington practice, Tegland says:

Rule 703 does not exclude the testimony of an expert who is solicited in anticipation of litigation, so long as the requirements of the rule are met. Furthermore, the patient's description of subjective symptoms is exempted from the hearsay rule by ER 803(a)(4) and may be related to the trier of fact by the physician. Weaknesses in the opinion may be brought out on cross–examination and go to the weight of the evidence.

5A K. Tegland, Wash. Prac., *Evidence* § 306, at 75 n.4 (2d ed. 1982).

This rule provides that it is irrelevant that the patient's statements in psychiatric interviews might be inadmissible hearsay, so long as a psychiatrist can reasonably rely upon them in forming an opinion about the patient's condition.

These developments demonstrate that the rationale for the objective–subjective test no longer exists in cases of psychological conditions. Medical opinions derived from psychiatric examination are primarily based on conversations with the patient. Symptoms of psychiatric injury are necessarily subjective in nature. Viewed in this context, an instruction on objective–subjective evidence is improper. *Gakovich* is accordingly overruled, insofar as inconsistent with this opinion.

■ The jury's verdict cannot be upheld on the ground

that the instruction nonetheless permitted Price to argue her theory of the case. Instructions are "sufficient" only if they correctly state the law and are not misleading. *State v. Wanrow*, 88 Wn.2d 221, 236–37, 559 P.2d 548 (1977). Additionally, the Department attorney's theory of the case, as reflected in his closing argument, was that the jury could not find an aggravation of Price's injury because the experts based their opinions on her subjective complaints.

CONCLUSION

We hold that it is improper to instruct the jury on the objective–subjective distinction in a case involving psychiatric disability. Instruction 14 did not properly state the law as to psychiatric disability and Price was precluded from arguing her theory of the case.

The Court of Appeals is reversed and the case remanded with instructions for a new trial.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and JAMES, JJ. Pro Tem., concur.