IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| PATRICIA K. SMITH-WADE, | No. 85563-8-I |
| Appellant, | |
| v. | |
| GLY CONSTRUCTION, INC., and THE DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondents. | |

BOWMAN, A.C.J. — Patricia Smith-Wade suffered an industrial injury and received worker's compensation benefits from the Department of Labor and Industries (DLI). After the DLI closed her claim, she appealed to the Board of Industrial Insurance Appeals (BIIA), and then the trial court. She now appeals a jury verdict affirming the BIIA. Smith-Wade argues the trial court erred by (1) excluding expert witness testimony, (2) refusing to give one of her proposed jury instructions, and (3) giving a jury instruction over her objection. Finding no reversible error, we affirm.

FACTS

In August 2019, 59-year-old Smith-Wade was working as a flagger for GLY Construction Inc. On August 22, she bent down to pick up a delineator, and a person riding an electric bicycle hit her from behind, knocking her forward onto her hands and knees.

In October 2019, Smith-Wade applied for benefits with the DLI. The DLI accepted her claim and provided treatment and time-loss compensation benefits during her recovery. It then closed the claim in February 2021 without an award for permanent partial disability. Smith-Wade appealed some of the DLI's time-loss decisions and its closure of the claim to the BIIA. And GLY appealed other DLI orders related to its responsibility for Smith-Wade's injuries and time-loss compensation benefits.

An industrial appeals judge (IAJ) set Smith-Wade's witness confirmation deadline for July 23, 2021, and set hearings for the parties' appeals throughout September 2021. On September 2 and 13, the parties took perpetuation depositions of two of GLY's medical experts, Dr. Milan Moore and Dr. Martin Tullus. Each witness testified that Smith-Wade had "reached maximum medical improvement" and could return to work as a flagger for GLY.

The IAJ held a hearing on September 8, 2021. With the publications of Dr. Moore's deposition and Dr. Tullis' upcoming deposition, GLY rested its case-in-chief. The IAJ held another hearing on September 14. With the publication of the scheduled deposition of its medical expert, Dr. Colm O'Riordan, the DLI rested its case. On the same day, with the scheduled publication of the deposition of her medical expert, Dr. H. Richard Johnson, Smith-Wade rested her case.

On September 28, 2021, more than two months after the witness confirmation deadline, Smith-Wade moved to amend her witness confirmation list and call vocational rehabilitation counselor Nicholas Choppa to testify. Smith-

Wade's attorney explained that Choppa had interviewed Smith-Wade on September 21 and prepared a report, which she had provided the parties on September 27. The DLI and GLY objected, arguing that the motion was untimely and without good cause, and that granting it would cause undue prejudice because the parties had taken and submitted their expert depositions. The IAJ set Smith-Wade's motion for a hearing in late October.

On October 5, 2021, the DLI submitted the completed perpetuation deposition of Dr. O'Riordan, who opined that Smith-Wade had reached maximum medical improvement and could return to work as a flagger for GLY. The next day on October 6, Smith-Wade submitted the completed perpetuation deposition of Dr. Johnson, who also agreed that Smith-Wade had "reached maximum medical improvement." But, unlike the other medical experts, Dr. Johnson testified that Smith-Wade's "permanent partial disability" prevented her from returning to her position at GLY.

On October 22, 2021, the IAJ held a hearing on Smith-Wade's motion to amend her witness confirmation list and add Choppa as a witness. The IAJ granted the motion but ordered that GLY and the DLI could recall their witnesses to respond to Choppa's testimony, and that Smith-Wade would be subject to sanctions for the late disclosure.[1] GLY moved for interlocutory review of the IAJ's rulings on Smith-Wade's motion to amend, which the acting chief IAJ denied.

---

[1] The IAJ capped the costs at $2,500 per witness.

At his perpetuation deposition on January 20, 2022, Choppa testified about whether Smith-Wade could return to work. Choppa said he could not provide a vocational analysis because the medical assessments he reviewed were incomplete. But he testified that based on Dr. Johnson's recommendation, Smith-Wade did not have the skills necessary to return to employment. And he testified that based on Smith-Wade's "work history, . . . her computer skills within that work history, education, and her stated current abilities," she did not have "transferrable skills" for computer work.

GLY and the DLI then recalled Dr. Moore and Dr. O'Riordan to respond to Choppa's report. Both experts testified that they reviewed Choppa's report, Dr. Johnson's "addendum report," and Choppa's deposition testimony. After review, their opinions had not changed that Smith-Wade could return to work for GLY.

The IAJ issued two proposed decisions and orders (PDOs) in July 2022. In its PDO on GLY's appeal, the IAJ concluded that certain conditions were proximately caused by Smith-Wade's industrial injury, but others were not. And it reversed DLI's award of time-loss compensation benefits for certain time periods. In its PDO on Smith-Wade's appeal issued a few days later, the IAJ affirmed the DLI's decision to close her claim without an award for permanent partial disability. The IAJ noted that it gave Choppa's opinion "little weight" because "he relied on Dr. Johnson's opinion for his vocational analysis," and Choppa "had incomplete medical information on which to base his opinion." And it ordered Smith-Wade to pay $1,250 to the DLI and $2,500 to GLY in sanctions for her untimely witness disclosure.

4

Smith-Wade petitioned the BIIA for review of both July PDOs on the issues of time loss and claim closure. The DLI also petitioned for review, arguing only that Smith-Wade's counsel, not Smith-Wade, should be responsible for paying the sanctions. GLY did not petition the BIIA for review.

On September 16, 2022, the BIIA denied Smith-Wade's petition to review the time-loss order and adopted the IAJ's PDO on GLY's appeal as its final decision. But it granted Smith-Wade's petition for review of the PDO related to claim closure and the DLI's petition for review related to sanctions. Then, on October 11, 2022, the BIIA affirmed the IAJ's PDO closing Smith-Wade's claim and clarified that Smith-Wade's counsel, not Smith-Wade, must pay the costs of recalling and redeposing Dr. Moore and Dr. O'Riordan.

On October 13, 2022, Smith-Wade appealed the BIIA's decisions to the superior court on the issues of time loss and claim closure.[2] Neither GLY nor the DLI appealed. In May 2023, the appeal proceeded to a jury trial.

Before trial, GLY moved to exclude Choppa's testimony because Smith-Wade identified him well past the witness confirmation deadline. Smith-Wade objected, arguing that GLY had not preserved the issue. The trial court disagreed and heard argument on whether it should exclude Choppa's testimony. It then granted GLY's motion to exclude Choppa's testimony because Smith-Wade's witness disclosure was untimely, did not show good cause, and created prejudice. The court also struck any other witness testimony referencing Choppa or his report. Smith-Wade moved for reconsideration, which the court denied.

---

[2] Smith-Wade did not challenge whether certain medical conditions were proximately caused by the industrial injury.

5

At trial, Smith-Wade proposed a jury instruction consistent with 6A *Washington Practice: Washington Pattern Jury Instructions: Civil* 155.09 (7th ed. 2022) (WPI), explaining that the extent of her physical disability or aggravation must be supported by a medical opinion relying, at least in part, on objective findings. The trial court declined to give the instruction. It concluded that other instructions addressed the issue and that Smith-Wade was free to argue her theory of the case in closing arguments. Smith-Wade did not object to the ruling.

The DLI then proposed an instruction explaining that an injured worker's condition and its proximate cause "must be established by medical testimony . . . in terms of medical probability, not medical possibility." Smith-Wade objected to the instruction, but the court adopted it as jury instruction 13.

The jury affirmed the BIIA's final decisions. The trial court then entered judgment for the DLI and GLY, awarding them statutory attorney fees and costs.

Smith-Wade appeals.

ANALYSIS

Smith-Wade challenges the trial court's exclusion of Choppa's testimony, its refusal to give Smith-Wade's proposed jury instruction, and its decision to give one of the DLI's proposed jury instructions.

Washington's Industrial Insurance Act (IIA), Title 51 RCW, provides that the trial court's review of a BIIA's determination is de novo, and that the party seeking review has the burden of showing the BIIA's decision was improper. RCW 51.52.115; *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 179, 210 P.3d 355 (2009). On appeal, we review the trial court's decision, not the BIIA's

order. *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 296, 354 P.3d 924 (2015).

In an IIA appeal, we review the court's decision under the ordinary civil standard of review. RCW 51.52.140; *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006); *Peterson v. Dep't of Labor & Indus.*, 17 Wn. App. 2d 208, 240, 485 P.3d 338 (2021). We review "whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings." *Watson*, 133 Wn. App. at 909. Finally, we view the record in a light most favorable to the party who prevailed in the trial court. *Rogers*, 151 Wn. App. at 180.

1. Exclusion of Choppa's Testimony

Smith-Wade argues that the court erred by excluding Choppa's testimony because it failed to engage in a proper *Burnet* analysis. *See Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). We agree but conclude that the error was harmless.[3]

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Clark County v. Maphet*, 10 Wn. App. 2d 420, 430, 451 P.3d 713 (2019). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Associated Mortg. Invs. v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976).

---

[3] Smith-Wade also argues that GLY's motion to exclude Choppa's testimony was not properly before the court. She says GLY failed to exhaust its administrative remedies and to cross-appeal the BIIA's decision to the superior court. Because we conclude that the trial court erred by excluding Choppa's testimony, we need not address that issue.

A trial court has broad discretion over the type of sanction it orders when a party violates a discovery order. *Burnet*, 131 Wn.2d at 494. But witness exclusion is a harsh remedy. *See Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013). And under *Burnet* and cases applying it, before imposing such a harsh remedy, "the trial court must explicitly consider" whether the party's violation was willful, whether the violation resulted in substantial prejudice to the opposing party's ability to prepare for trial, and whether a lesser sanction was an adequate remedy. *Id.* at 338.

Here, GLY moved in limine to exclude Choppa's testimony at trial, arguing that Smith-Wade moved the BIIA to add Choppa as a vocational witness after the witness confirmation deadline had passed, and after GLY had presented its witnesses and rested its case-in-chief. GLY asserted there was no good cause for the delay, and allowing the testimony would prejudice GLY and the DLI.

After hearing argument, the trial court granted GLY's motion, stating that Smith-Wade's request was untimely, as she did not "identify the witness in response to the many discovery requests," "did not confirm the witness as required by the board's litigation deadlines," and instead waited until the parties had rested before moving to amend the witness confirmation. The court added that Smith-Wade did not provide good cause and that her failure to comply with the deadlines created "significant prejudice to the other parties." It concluded that "under these specific circumstances," excluding Choppa was "appropriate and actually arguably necessary."

8

But the trial court did not identify the "significant prejudice" to GLY's ability to prepare for trial. Indeed, the record does not support such a finding. The IAJ allowed the DLI and GLY to recall their expert witnesses after reviewing Choppa's report and ordered Smith-Wade to compensate them for the associated costs. Those witnesses then reviewed Choppa's report, and they testified it had no impact on their opinions that Smith-Wade had reached maximum medical improvement and that she could return to work. GLY fails to explain how that process prejudiced its ability to prepare for the superior court trial, which relied on only the record created by the BIIA proceedings.

Nor does the record show that the court explicitly considered a lesser sanction than witness exclusion. Although the court acknowledged that excluding Choppa's testimony was a "significant remedy" and asserted that doing so was "appropriate and . . . arguably necessary," it failed to explicitly consider whether a lesser sanction would suffice.

GLY asks that we "infer from words used and context" that the trial court considered exclusion "the only appropriate remedy." But such inferences do not satisfy *Burnet*. Under *Burnet*, the court needed to identify any prejudice to GLY and to have "at least considered, on the record, a less severe sanction that could have advanced the purposes of discovery and yet compensated [the opposing party] for the effects of" Smith-Wade's discovery violation. 131 Wn.2d at 494, 497. It did not do so. Because the court did not engage in an adequate *Burnet* analysis, it abused its discretion by excluding Choppa's testimony.

9

Still, the DLI asserts that any error was harmless. Erroneously excluded evidence is harmless when the evidence is merely cumulative or irrelevant. *Jones*, 179 Wn.2d at 360, 356.

Here, Choppa's testimony was cumulative of Dr. Johnson's. Choppa relied almost exclusively on Dr. Johnson's medical opinions that Smith-Wade sustained a permanent partial disability that prevented her from returning to work. He concluded that "based upon Dr. Johnson's recommendation, . . . my opinion is that [Smith-Wade] does not possess any skills to return to competitive employment." And he testified he could provide an opinion based on only Dr. Johnson's recommendations because the other physicians' assessments were unclear about Smith-Wade's ability to return to work. He said that outside of Dr. Johnson's opinions, the "vocational analysis [was] incomplete," which prevented him from rendering a "sound" vocational opinion.

Smith-Wade argues that Choppa's testimony was not cumulative because Choppa was the only witness qualified to testify about "vocational factors" like labor market conditions and a person's individualized assessment. But Choppa did not address those factors, except to say that given Dr. Johnson's recommendations, Smith-Wade's abilities do not "comport with . . . the demands of the competitive labor market." Choppa's only nonduplicative testimony was that Smith-Wade did not have transferrable skills for computer work. But any question about the vocations Smith-Wade could perform had she been found disabled was not the primary issue before the court. And we cannot say that excluding this testimony was enough to alter the jury's verdict.

Because Choppa's testimony was cumulative, excluding the testimony was harmless error.[4]

2. Jury Instructions

Smith-Wade argues the trial court erred by refusing to give her proposed jury instruction and by giving one of the DLI's proposed jury instructions.

We review a challenge to jury instructions for "whether the trial court abused its discretion by giving or refusing to give certain instructions." *Goodman v. Boeing Co.*, 75 Wn. App. 60, 68, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995). "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996).

To determine whether an instruction could have confused or misled the jury, we examine the instructions in their entirety. *Lewis v. Simpson Timber Co.*, 145 Wn. App. 302, 318, 189 P.3d 178 (2008). "The mere fact that a proposed instruction is legally correct does not mean that it is an abuse of discretion not to give it." *Gomez v. Dep't of Labor & Indus.*, 13 Wn. App. 2d 644, 654, 467 P.3d 1003 (2020). And even if the trial court erred by giving the instruction, the error "does not require reversal unless prejudice is shown." *Boeing Co. v. Key*, 101

---

[4] Smith-Wade also argues that after excluding Choppa's testimony, the trial court should have refunded her the sanctions she paid GLY and the DLI to cover the costs of recalling their witnesses. But GLY and the DLI incurred those costs to present their cases before the BIIA. The trial court's exclusion of Choppa's testimony did not offset those costs.

Wn. App. 629, 633, 5 P.3d 16 (2000). "Error is not prejudicial unless it presumptively affects the outcome of the trial." *Id.*

A. Smith-Wade's Proposed Jury Instruction

Smith-Wade argues that the court erred by refusing to give her proposed jury instruction addressing how to assess medical testimony discussing the extent of her injuries.[5] We agree but conclude that the error was not prejudicial.

At trial, Smith-Wade proposed the following instruction, consistent with WPI 155.09:

> The extent of Mrs. Smith[-Wade]'s industrially related physical disability must be supported by medical testimony based at least in part upon one or more objective findings.
> Statements of complaints by the worker made to a physician are called subjective complaints, findings of disability which can be seen, felt or measured by an examining physician are called objective findings.
> In determining extent of disability, a physician cannot rely solely upon complaints, but must have some objective basis for his or her opinion. On the other hand, a physician need not reply [sic] solely upon objective findings. If there are objective findings, then the physician may also consider subjective complaints.

WPI 155.09 instructs a jury that the claimant must prove the extent of their alleged disability "with medical testimony based in part on objective medical findings." *Felipe v. Dep't of Labor & Indus.*, 195 Wn. App. 908, 916, 381 P.3d 205 (2016). The instruction further details the bases by which a doctor can reach their medical opinion. WPI 155.09. The instruction's note on use states that the "instruction should be given in cases of physical disability." *Id.*; *see also Price v.*

---

[5] The DLI and GLY argue that Smith-Wade waived this argument by failing to object when the court declined to give the instruction. We exercise our discretion to address the issue on its merits. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) ("RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right.").

*Dep't of Labor & Indus.*, 101 Wn.2d 520, 525, 682 P.2d 307 (1984) (relying on WPI 155.09's note on use).

Smith-Wade's appeal put before the jury the extent of her physical disability. The parties presented testimony about Smith-Wade's pain, injuries, and disability. And medical doctors testified about whether Smith-Wade was temporarily or permanently disabled during certain time periods and explained the reasons underlying their opinions. So, Smith-Wade's proposed instruction was not misleading and informed the jury of the applicable law. As a result, the trial court abused its discretion by refusing to give the instruction.

Still, Smith-Wade fails to show prejudice. She argues that the court's failure to provide the instruction was prejudicial because the jury was not instructed on how to apply objective and subjective evidence or that it could consider Smith-Wade's subjective complaints about her disability. She contends the jury might have assumed "that all subjective findings are invalid." But jury instruction 14 provided that "[a]ny determination on the extent of Mrs. Smith-Wade's disability must be supported by medical testimony. However, you may consider all of the testimony, both lay and medical, in evaluating Mrs. Smith-Wade's disability." By instructing the jury that it could consider medical and lay testimony to determine the extent of Smith-Wade's disability, the court told the jury that it could consider Smith-Wade's subjective complaints about her disability.

And, as much as Smith-Wade argues that her proposed jury instruction was necessary to inform the jury how "to apply evidence of objective and

subjective medical findings in support of claim related-disability," Smith-Wade misconstrues WPI 155.09. The instruction does not inform the jury how to apply medical findings. Rather, it helps the jury assess the credibility of a doctor's opinion by detailing the proper bases for the opinion. And here, the parties do not challenge the information the experts relied on in reaching their opinions. As a result, the court's error did not prejudice Smith-Wade.

B. The DLI's Proposed Jury Instruction

Smith-Wade argues that the court erred by giving the DLI's proposed instruction outlining Smith-Wade's burden to establish her condition because "it instructs the jury on a legal issue not present in this case."[6] Again, we agree but conclude that the error was not prejudicial.

The court gave instruction 13, providing:

> Mrs. Smith-Wade's condition and the proximate cause of that condition must be established by medical testimony.
> Medical testimony of this causal relationship must be in terms of medical probability, not medical possibility.
> Testimony as to possibility means testimony confined to words of speculation and conjecture. Medical testimony that an incident could cause, can cause, or probably could cause such a condition is not sufficient.

Instruction 13 explains what Smith-Wade must show to establish that she suffered an industrial injury. But whether Smith-Wade suffered an industrial injury was not before the jury. The IAJ found that certain conditions were caused or aggravated by Smith-Wade's industrial injury. And the parties did not appeal those issues to the trial court. Instead, the jury needed to decide only the extent

---

[6] Smith-Wade also argues that the court should not have given the instruction "because the legal sufficiency of the evidence is not a question for the jury."

of Smith-Wade's disability. Because the instruction was unrelated to any issue before the jury, the court erred by giving it. *See Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (proper jury instructions inform the trier of fact of the applicable law).

Still, the jury instruction did not prejudice Smith-Wade because the verdict form made it clear that the BIIA already decided she suffered an industrial injury and that the jury did not need to reconsider the issue. For example, question four of the verdict form provided that Smith-Wade's right knee sprain, right knee patellar tendinitis, and Baker's cyst were "proximately caused by the industrial injury," and that other injuries were "aggravated by the industrial injury." It then asked the jury only whether those injuries were fixed, stable, and no longer in need of treatment.

Because the verdict form questions presumed that Smith-Wade suffered industrial injuries and that the incident at work proximately caused those injuries, jury instruction 13 did not prejudice her.[7]

3. Attorney Fees

Smith-Wade seeks attorney fees on appeal under RAP 18.1 and RCW 51.52.130. Under RCW 51.52.130, we may award attorney fees on appeal if the injured worker requesting fees prevails in the action, and the litigation affects the accident fund or medical aid fund. *Pearson v. Dep't of Labor & Indus.*, 164 Wn. App. 426, 445, 262 P.3d 837 (2011). Because neither of those requirements is met here, Smith-Wade is not entitled to attorney fees on appeal.

---

[7] For this reason, we need not address Smith-Wade's arguments that jury instruction 13 contains a typographical error and incorrectly defines causation.

Because Smith-Wade fails to show any reversible error, we affirm the jury verdict and trial court judgment affirming the decision of the BIIA.

_____, ACJ

WE CONCUR:

_____
Díaz, J.

_____
Mann, J.